# PEOPLE v. STORKE.*

## Cr. No. 593; February 21, 1900.

### 60 Pac. 420.

**Libel—Witness—Impeachment.—**Where a Witness in a prosecution for libel testified that he gained access to defendant's room by climbing through a transom over the door, the testimony of one who had charge of the room and the keys thereof, as to whether or not anyone ever applied to him for access to the room, was incompetent to impeach the former witness.

**Libel—Impeachment of Witness.—**Where a Witness, on cross-examination in a prosecution for libel, testified that he went to a certain town and inquired of M. who the woman in the town was who would have been likely to have written the letters complained of as libelous, and M. answered that he knew of but one woman, testimony of M. that he did not make the statement ascribed to him by witness is inadmissible to impeach the latter, as such statement related to an immaterial and collateral matter.

**Libel—Opinion Evidence.—**In a Prosecution for libel, evidence that a witness knew that the defendant was innocent, and that she did not write the letter complained of, is incompetent, as mere opinion.

**Libel—Specimens of Handwriting.—**In a Prosecution for libel, it is not error to strike out and refuse to submit to the jury specimens of the handwriting of a person other than defendant, who has admitted his authorship of the writing stricken out, where an expert has testified that the writing in the libelous article does not resemble such writings, and there is no evidence to connect the author thereof with the writing of the libelous matter.

**Libel.—**Where Testimony of Experts in Regard to the Authorship of a libelous letter was introduced in a criminal prosecution, it was not error to refuse to instruct that the testimony of experts should be received and weighed with great caution, and that the evidence of a witness who is brought on the stand to support a theory by his opinion is testimony exposed to a reasonable degree of suspicion, which there is great reason to believe is in many instances the result of employment, and his bias arising out of it.

**Libel.—**The Supreme Court will not Reverse a conviction for libel, for refusal to give an alleged requested instruction, where the record does not show that defendant requested the court to give the instruction.

APPEAL from Superior Court, Santa Barbara County.

*For subsequent opinion in bank, see 128 Cal. 486, 60 Pac. 1090.

Yda Addis Storke was convicted of libel, and she appeals. Affirmed.

H. P. Starbuck and C. T. Currier for appellant; Attorney General Ford for the people.

COOPER, C.—The defendant was convicted of the crime of libel. She prosecutes this appeal from the judgment, and an order denying her motion for a new trial. It is conceded that the evidence sustains the verdict, and that the instructions given to the jury were correct. Defendant, however, claims that numerous errors were committed in the rejection of testimony, and the refusal of the court to give an instruction asked by defendant.

1. The defendant called one Ivison as a witness, and asked him this question: "Now, I will ask you if any application was ever made to you for permission to enter those rooms, or to give the keys to any person for the purpose of entering those rooms?" The district attorney objected to the question on the ground that it was incompetent, irrelevant and immaterial, and the objection was sustained. It is claimed that this evidence was material for the purpose of impeaching one Peraude, a witness for the people. Peraude testified that on a certain occasion, before the trial, during the absence of defendant from her rooms, witness and one Storni entered therein; that Storni lifted witness up, and he stood on top of Storni and entered through a transom window; that he then opened the door and Storni entered, and the two made a search and procured specimens of defendant's writing and some tissue paper, which articles were used in evidence during the trial. The evidence sought would not have tended to contradict the witness Peraude. Counsel has not pointed out in the evidence of Peraude that he ever said that he applied to Ivison for permission to enter the rooms or to get the keys, and we have searched the transcript in vain for any such evidence. The question asked was general, and the attention of Ivison was not called to the witness Peraude or to anyone. The ruling was correct.

2. In answer to questions of defendant's counsel in cross-examination, the witness Peraude said that he went to one Maulsby, in the town of Santa Barbara, and said: "Who is there in this town—a woman who is in the habit of writing

for the newspapers, who is a bright, smart, vindictive woman, and has something to say about everyone that is connected in any way with Winchester, and that has it in for him? And he looked at me a moment, and he said, 'I know of but one woman.' I said, 'Who is it?' 'Mrs. Storke.' '' The defendant called Maulsby as a witness for the purpose of impeaching Peraude, and after reading the above extract to him, said ''Now, I will ask you, Mr. Maulsby, if you so stated to the witness Peraude at the time of his interview, or at any other time.'' The district attorney objected to the question upon the ground that it was incompetent, immaterial and an attempt to contradict Peraude as to a collateral matter. The court sustained the objection, and defendant now argues with much apparent earnestness that the court erred in so doing, to her injury. We think the ruling correct. The answer of Peraude, concerning which it is sought to impeach him, was brought out by defendant in her cross-examination. The only thing that Peraude related as being said by Maulsby was, ''I know of but one woman.'' Maulsby did not mention defendant's name, and said nothing against her. In answer to Peraude's description, he said that ''he knew of but one woman.'' It seems to us that the answer of Peraude as to what Maulsby said was as to a wholly immaterial matter. That Maulsby knew of but one woman in town who answered the description given to him by Peraude was not a material circumstance. Because Maulsby knew only one such woman, we cannot presume that he referred to defendant. The rule is elementary that a witness cannot be impeached as to a collateral matter brought out in cross-examination. The statement of Maulsby was not competent evidence. It was not made in the presence of defendant and was not admissible. The defendant having asked questions of Peraude, in cross-examination, of such a nature as to elicit the answer, and not having in any way objected to it or moved to strike it out, was not afterward entitled to impeach Peraude by showing that the statement was not true.

3. It is claimed that the court erred in sustaining an objection to a question asked by defendant of her own witness, Jackson. The question was: ''Do you know, Mr. Jackson, that this defendant is innocent? Do you know that this defendant did not write the letters charged against her?'' The ruling of the court was clearly correct. To allow wit-

nesses for the people and for the defendant in a criminal case to testify that they knew defendant to be innocent or guilty would be to introduce a new rule into our criminal practice. The question did not ask for a fact or for any statement that could be disproved.

4. It is claimed that the court erred in striking out certain exhibits of the writing of one F. N. Gutierrez. These specimens of the writings of Gutierrez were shown to one Kytka, who claimed to be an expert in handwriting, and who had been extensively examined in regard to the alleged libelous writing and other writings claimed to have been written by defendant. Kytka testified that the exhibits of the writings of Gutierrez shown to him were not, in his opinion, the same as the libelous writings, and that there was no similarity or resemblance between them. Gutierrez was called as a witness, and identified the exhibits so shown to the expert Kytka, and admitted that they were his own handwriting. The witness Kytka had also given his opinion in regard to the alleged libelous writing, and several exhibits claimed to be in the handwriting of defendant, being People's Exhibits A to T2. Exhibit A is the writing set forth in the indictment. The bill of exceptions expressly states: ''There was no evidence introduced to connect F. N. Gutierrez with the writing or publication of any of the letters or exhibits marked 'Plaintiff's Exhibits A to T2,' inclusive, or tending to show that he had any knowledge of the writing or publishing of said letters or any of them.'' In view of the evidence and the statement in the bill of exceptions, the exhibits were correctly stricken out. They had nothing to do with the case, and did not in the remotest degree tend to show the guilt or innocence of the defendant. The claim is made that the jury had the right to examine them and compare them with the alleged libelous writings, for the purpose of determining in their own minds whether or not the libelous writings were in fact written by Gutierrez. If this were so, it would be a strange and unheard of rule in criminal procedure. The same rule would permit the defendant to introduce every letter and every writing of every man, woman and child in Santa Barbara county, or even in the state of California, and have the jury compare the handwriting of each with the libelous matter for the purpose of determining if someone other than defendant might not have written it. The wheels of justice would be

clogged and the administration of the criminal law cease, under such rule, in all cases where a writing was the subject of the crime charged.

5. The defendant claims that the court erred in refusing to give the following instruction: ''The value of expert testimony depends upon the circumstances of each case, and of these circumstances you must be the judges. You must determine the weight to be accorded to it, but in all cases the testimony of experts is to be received and weighed with great caution. The evidence of a witness who is brought upon the stand to support a theory by his opinion is testimony exposed to a reasonable degree of suspicion, which there is great reason to believe is in many instances the result of employment, and his bias arising out of it.'' The instruction was properly refused. Counsel might, under the latitude allowed, have used it as a part of their argument to the jury, but the court was not required to make the argument for them. As a proposition of law, the instruction is not correct; neither does it appear from the record that the defendant requested the court to give it. The court very fully and ably instructed the jury as to all propositions of law applicable to the case. The defendant appears to have offered forty-three different instructions, the greater number of which were given. They cover some fifty-five folios of the record, and many of them might well have been refused. It is not necessary to discuss the other alleged errors. We have discussed those that appear the most plausible, and, as to the others, it is sufficient to say that we have examined them and do not think that any substantial error was committed. The judgment and order should be affirmed.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.