[Crim. No. 1543. Fourth Dist. July 26, 1960.]

THE PEOPLE, Respondent, v. WALTER EUGENE MASON, Appellant.

* Assigned by Chairman of Judicial Council.

Russell A. Holt for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

SHEPARD, J.—This is an appeal from a judgment of conviction of the crime of assault with a deadly weapon with intent to commit murder, and from the order denying defendant's motion for a new trial.

Defendant was tried before a jury and convicted of the crime of assault with a deadly weapon with intent to commit murder. He appeals from the judgment of conviction and from the order denying his motion for a new trial.

The uncontradicted facts appearing in the record before us are that: Defendant married Joleen Nugent in July, 1958. The marriage was stormy, and defendant herein brought suit for divorce which was followed by a cross-complaint by Joleen for a divorce on her own behalf. June 4, 1959, Joleen was in the hospital where she had given birth to a child. Defendant on the same day secured a .25 calibre automatic pistol, loaded it, placed 26 additional rounds of ammunition in his pocket, and drove to the airfield where the business of Joe Nugent (father of Joleen) was located. After a few

minutes of friendly conversation with some of Nugent's employees and without any indication or suggestion of anger on his part, he approached the door of Nugent's office. As Nugent came out of the office, without any words of any kind being spoken by the defendant or by Nugent, defendant drew the pistol from his pocket and from a position 8 to 11 feet in front of Nugent, fired all seven rounds contained in the gun. Nugent was wounded in the arm, the hip and the chest. The bullet entering the chest passed through the edge of the lung, through the liver and lodged near the vertebra, where it still remained at the time of trial because up to that time the doctor considered removal too dangerous to Nugent's life. Nugent was standing about one step in front of the doorway, and all of the bullets that did not lodge in Nugent's body went through or into the edge of the doorway. Thus all bullets struck or came close to Nugent. Nugent was then dressed in a light tropical shirt and lightweight trousers. Nugent was unarmed, and did not ordinarily carry a gun. However, he was an unpaid deputy sheriff serving in the Sheriff's Aero Squadron and sometimes did carry a gun when in uniform on active duty.

Further evidence relating to defendant's unmerciful beating of Joleen, firing a gun at her, officers being called to protect her; defendant's exhibitions of unrestrained fury at her without reasonable provocation; defendant's claim that, on the day he approached Nugent, Joleen had talked to defendant by telephone and told him to stay away from Nugent because Nugent was armed; defendant's claim that Nugent reached for his pocket and that defendant saw what appeared to be the handle of a .45 calibre revolver, that Nugent then had a "ferocious" look on his face; and defendant's claim that Nugent interfered with defendant's family life improperly, is all in conflict. Defendant also claimed that some six or seven months prior to the shooting, Nugent had threatened to shoot defendant. Nugent admits the threat but says it was conditional based on information that defendant was beating up Joleen and that what he really said was, "Jack, if you harm my daughter, I will kill you." At any rate, it is not disputed that after this occurred defendant worked for Nugent on a friendly basis for several weeks. There is no contention by defendant that he approached Nugent in an angry frame of mind or intending bodily harm because of provocation. In fact, defendant's entire testimony denies such intent and rests his attempted justification for the shoot-

ing entirely on his claimed fear for his own life engendered by his alleged sight of the butt of a .45 pistol being drawn from Nugent's pocket.

### MOTION TO REOPEN EVIDENCE TO PROVE OPINION OF OFFICER WHO SIGNED ORIGINAL COMPLAINT

 Defendant first contends he was denied due process of law because the trial court refused to reopen the evidence at the close of the testimony for the purpose of securing the attendance and testimony of officer Earl E. Pursell, Jr., who had signed the original complaint as the result of which defendant was arrested and the preliminary examination had. Defendant does not contend that Pursell had any personal knowledge of the facts of the case. The district attorney offered to stipulate that Pursell had no knowledge of the case beyond that obtained from the official reports of other investigating officers. While defendant did not accept the stipulation, he nevertheless has nowhere offered to prove, nor has he even suggested, that the statement of the district attorney contained in the offered stipulation is not actually true and correct. Neither does defendant anywhere suggest that the original complaint did not afford him full knowledge of the charge he must defend against and the name of the person he is alleged to have shot.

 First, it should be noted that a complaint is merely the basis for the warrant of arrest and the commencement of the preliminary magisterial investigation. Objections thereto must be taken while the defendant is held under the warrant of arrest. After the preliminary hearing and the order holding defendant to answer to the superior court, the original complaint becomes *functus officio*. (*People v. Tibbitts,* 71 Cal.App. 709, 712 [1] [236 P. 217]; *People* v. *Hinshaw,* 194 Cal. 1, 9 [2] [227 P. 156]; *People* v. *Litchman,* 17 Cal. App.2d 252, 253 [1] [61 P.2d 1229].) Defendant does not contend that the compulsory processes of the court for obtaining the attendance of the witness were not afforded to defendant prior to trial. The subpoena was not served and there is no suggestion that the court would not have permitted the witness to be called to the witness stand had he been present at the trial. It appears that at the time of trial he was on vacation and could not be located. Neither is there any contention that defendant could not have subpoenaed the witness had he done so promptly after the cause was set for trial.

 The reopening of the cause for further evidence after

the close of testimony is within the discretion of the trial court. (*People* v. *Berryman*, 6 Cal.2d 331, 338 [4] [57 P.2d 136]; *People* v. *Bloemsma*, 171 Cal.App.2d 261, 266 [1] [340 P.2d 350]; *People* v. *Pompa*, 178 Cal.App.2d 62, 66 [5] [2 Cal. Rptr. 659].) ▇ Under the circumstances here at bar, we can find no abuse of discretion. It is apparent that had the motion been granted, a continuance would have been automatically necessary. Defendant offered no affidavit nor even any suggestion that Pursell could have testified to any material fact in the case. Thus the court would have had no ground upon which to grant a continuance, for there was no showing that the ends of justice would have been promoted thereby. (Pen. Code, § 1050.) ▇ A continuance lies within the discretion of the trial court. (*People* v. *Buckowski*, 37 Cal.2d 629, 631 [1a-b, 2] [233 P.2d 912].)

▇ Defendant has suggested that he wanted to elicit from the officer the officer's opinion regarding the guilt or innocence of defendant. Such question and answer would have been clearly objectionable. A consistent line of authority in all jurisdictions has held that as a general rule a question calling for the direct opinion of the witness on the ultimate fact which the court or jury is called upon to decide, is objectionable as calling for an answer that is not probative and invades the province of the court or jury. (Witkin, California Evidence, pp. 221, 223; 20 Am.Jur. 635, 32 C.J.S. p. 74, 23 C.J.S. 67, 19 Cal.Jur.2d 17, § 290; *People* v. *Storke*, 6 Cal.Unrep. 405, 407-408 [60 P. 420, 421 [3]].) ▇ The trial court cannot be charged with error for refusal to reopen the trial for receipt of inadmissible evidence. (*People* v. *Conlon*, 138 Cal.App. 576, 578 [2] [32 P.2d 990].)

▇ Defendant contends that his basic constitutional rights have been violated because the court refused to compel officer Pursell to face him at the trial of the cause. Defendant misunderstands the nature of the basic constitutional right and the provisions of Penal Code, section 686. This is a right to be confronted by witnesses who testify against him *at the trial*. This right does not include that of facing in court a person who admittedly has no personal knowledge of relevant facts in the case and who does not offer to testify. ▇ As was said in *People* v. *Taylor*, 159 Cal.App.2d 752, 756 [1] [324 P.2d 715]: "The right of the accused to be confronted with witnesses is the right to have the witnesses testify in his presence and the right of the accused to cross-examine them; it is not required that all witnesses or persons who may have

knowledge of the crime be produced in court or called to testify.''

 Nor is the prosecution compelled to call any particular witness. Its duty is to fairly present ''the material evidence bearing upon the charge on which the defendant is on trial.'' (*People* v. *Parry*, 105 Cal.App.2d 319, 323 [7] [232 P.2d 899].)

### INSTRUCTIONS—SUFFICIENCY—MALICE

 Defendant next contends that it was prejudicial error for the court to refuse to read to the trial jury defendant's requested jury instruction pertaining to malice. The instruction requested reads as follows:

''You are instructed that malice and deliberation are essential elements of the crime of assault with intent to murder; and that malice is not necessarily inferred from the use of a deadly weapon, or the mere fact of shooting or killing a person; and, while it is true that malice may be implied, it is not an inference or presumption of law, but a question of fact to be found by the jury from the proof of facts and circumstances, sufficient to warrant such implication; and the evidence of such facts and circumstances surrounding and attending the shooting should be of such a character as to remove all reasonable doubt in your minds on the question of defendant's malice before you can find him guilty.''

Defendant argues that the failure to give this instruction was prejudicial because ''There was no evidence that before the alleged offense the appellant was hostile, nervous or excited.'' The proposed instruction did not contain and was not accompanied by any definition of the term ''malice.'' Thus the inclusion of the instruction proposed on malice might well have confused the jury without the legal definition of malice. As was said in Perkins on Criminal Law, page 30:

''The phrase 'malice aforethought' is peculiarly confusing to the layman because each word has a different significance in legal usage than in ordinary conversation.

''. . . . . . . . . . . .

''In ordinary conversation the word 'malice' conveys some notion of hatred, grudge, ill will, or spite, but no such idea is incorporated in the legal concept of 'malice aforethought'.''

But legal malice as set forth in our code ''is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.''

(Pen. Code, § 188.) (*People* v. *Coleman,* 50 Cal.App.2d 592, 596 [4] [123 P.2d 55] ; *People* v. *Cornett,* 61 Cal.App.2d 98, 106 [6] [141 P.2d 916].) The law, of course, recognizes no degrees of murder in the crime of assault with a deadly weapon with intent to commit murder. (*People* v. *Bernard,* 28 Cal.2d 207, 214 [5] [169 P.2d 636].)

 It is true that the trial judge should, whether requested to or not, instruct the jury on all of the general principles of law pertinent and necessary to a decision by the jury. (*People* v. *Putnam,* 20 Cal.2d 885, 890 [3] [129 P.2d 367] ; *People* v. *Warren,* 16 Cal.2d 103, 116 [10] [104 P.2d 1024].)

 In addition to full and complete instructions on other phases of the case, the court gave the following instructions:

''In the case of certain crimes it is necessary that in addition to the intended act which characterizes the offense, the act must be accompanied by a specific or particular intent without which such a crime may not be committed.

''Thus in the crime of assault with intent to commit murder, a necessary element is the existence in the mind of the perpetrator of the specific intent to murder the person assaulted, and unless such intent so exists that crime is not committed.''

''An assault with a deadly weapon is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another with a deadly weapon.

''Any object, instrument or weapon, when used in a manner capable of producing and likely to produce death or great bodily injury, is then a deadly weapon.

''To constitute an assault with a deadly weapon, actual injury need not be caused. The characteristic and necessary elements of the offense are the unlawful attempt, with criminal intent, to commit a violent injury upon the person of another, the use of a deadly weapon in that attempt, and the then present ability to accomplish the injury. If an injury is inflicted, that fact may be considered by the jury, in connection with all the evidence, in determining the means used, the manner in which the injury was inflicted, and the type of offense committed.''

''If you find that the defendant was guilty of an offense included within the charge of the information, but entertain a reasonable doubt as to the crime of which he is guilty, it is your duty to convict him only of the lesser offense.''

''To constitute the crime of assault with intent to commit murder there must exist an assault and, in the mind of the

perpetrator, a specific, preconceived intent to kill a human being.''

"When the information charges that the defendant committed an assault with intent to commit murder, if the jury should find that he committed the assault with a deadly weapon but that he did not do so with a specific preconceived intent to kill, the defendant may be found guilty only of the lesser offense, namely, assault with a deadly weapon.''

"It is lawful for a person who is being assaulted, and who has reasonable ground for believing that bodily injury is about to be inflicted upon him, to stand his ground and defend himself from such attack, and in doing so he may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.''

As heretofore indicated, the defendant offered no evidence that the killing was the result of uncontrollable or any provoked anger. His evidence is pointed solely and exclusively at self-defense. This the jury quite clearly rejected. Under the particular evidence and facts present in the case at bar, we think the jury was adequately equipped to understand and apply the law covering the case presented to them. The failure to give mere abstract instructions not applicable to the facts is not error. (*People* v. *Dorman*, 28 Cal.2d 846, 853 [3] [172 P.2d 686]; *People* v. *Hayes*, 161 Cal.App.2d 129, 134 [4-5] [326 P.2d 169].) We are unable to ascribe prejudicial error to the failure to give an instruction on malice.

## Court Reporter, Competence

 Defendant next contends that it was a denial of due process of law to permit a court reporter who was not a certified shorthand reporter to report the proceedings at the trial. Defendant bases his contention that the shorthand reporter was incompetent on a letter *dehors* the record. The reporter at some previous time had failed to qualify as a certified shorthand reporter. Defendant's contention is without merit. The use of a pro tempore shorthand reporter in court proceedings is not controlled by Business and Professions Code, sections 8000-8032, relating to certified shorthand reporters. Pro tempore court reporter appointments are controlled by Government Code, sections 69941 et seq.

## Transcript Corrections

 In the early stages of this appeal defendant complained of certain alleged defects in the transcript. This

court returned the cause to the trial court for resettlement proceedings. The trial court conducted such proceedings with defendant and his counsel as well as the district attorney being present and participating therein. None of the defects presented in the cases of *People* v. *Chessman,* 35 Cal.2d 455 [218 P.2d 769, 19 A.L.R.2d 1084], and *Chessman* v. *Teets,* 354 U.S. 156 [77 S.Ct. 1127, 1 L.Ed.2d 1253], were present in the case here at bar. The contended typographical errors were minor in character. Some corrections were made by the trial court, and defendant does not now contend that the transcript as presently before this court is not correct.

Even though the corrections had not been made, we are unable to discover how the testimony as originally written would have been harmful to defendant. For example, defendant complains that Nugent stated that at first he did not know if defendant was shooting at him or the doorway. Since Nugent was standing only one step in front of the doorway, eight to eleven feet from defendant, and was wounded three times, with all bullets fired either striking him or coming close to him, it is beyond reason to doubt what defendant was shooting at. A person facing, without warning, a spouting gun at a distance of 8 feet would very possibly be bewildered in the first second and not realize who was being shot at. There is nothing here to help defendant.

Again, in the dispute over whether the correct word used in a certain sentence was ''doorway'' or ''passageway,'' a like result ensues. A similar situation results in the dispute over whether the correct transcription was ''ran'' or ''walked.'' Defendant himself contends that he ''walked rapidly'' away from the scene of the shooting to his motorcycle and attempted to start it. The few other corrections made are in the same category.

We have been at pains to read the entire record. The evidence of defendant's guilt is overwhelming. The record shows that the trial court was patient, courteous and fair in its conduct of the trial. We find no prejudicial error.

The judgment and order denying the motion for new trial are affirmed.

Griffin, P. J., and Shea, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.