[Civ. No. 30546.   Second Dist., Div. Four.   Oct. 7, 1966.]

WILLIAM BUCK, Petitioner, v. THE SUPERIOR COURT OF VENTURA COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Trope & Trope and Sorrel Trope for Petitioner.

Woodruff J. Deem, District Attorney and John J. Hunter, Deputy District Attorney, for Respondent and Real Party in Interest.

KINGSLEY, J.—Petitioner was charged by indictment with the crime of forgery, grand theft and offering a forged instrument for recordation. A motion to dismiss, under section 995 of the Penal Code, was made; it was granted as to the count charging offering a forged instrument for recordation (Pen. Code, § 115), but it was denied as to the other two counts. A timely petition for a writ of prohibition was thereafter filed, pursuant to section 999a of the Penal Code. We issued an alternative writ, a return and an amended return were filed, and the matter has been twice argued before us. We deny the peremptory writ.

I

In matters coming before us under section 999a of the Penal Code, we review the action of the trial court in denying a motion previously and timely made under section 995 and, as in all cases of review in this court, we look to the record before the court whose action we review. In passing on a motion under section 995, the trial court reviews the evidence produced before the committing magistrate or the grand jury (as the case may be); if that evidence meets the test hereinafter discussed, the motion is properly denied and the denial cannot be upset by this court. But if the evidence before the magistrate or the grand jury does not meet the test of sufficiency, the motion must be granted and a denial will be overturned here. In either situation, only the evidence actually offered and received by the magistrate or the grand jury may be examined; if the People have left gaps in their proof, which could be filled by additional evidence, their remedy is to resubmit the matter to a magistrate or to a grand jury; they cannot supplement their proofs by additional evidence on the motion under 995 or in this court.

The test for determining the sufficiency of evidence to withstand a motion under section 995 is as follows: "The

court is only to determine whether the magistrate [or the grand jury], acting as a man [or people] of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated." (*People* v. *Jablon* (1957) 153 Cal.App.2d 456, 459 [314 P.2d 824].)

II

By stipulation, we have examined the reporter's transcript of the testimony presented to the grand jury in this matter, which transcript was before the superior court for consideration. That transcript, in its entirety, reads as follows:

"BOBBY McCLISH,

called as a witness before the Grand Jury, having been first duly sworn, testified as follows:

"QUESTIONS BY MR. OSBORNE:

"Q. Please state your full name to the Grand Jury?

"A. Bobby McClish.

"Q. What is the full name of your wife?

"A. Virginia McClish.

"Q. What is your address?

"A. 1125 5th Place, Port Hueneme.

"Q. Did you live there on May 3rd, 1963?

"A. Yes, I did.

"Q. On or about that date, did you and your wife own the property at that address?

"A. Well, we were buyers. We was buying the place.

"Q. It was in your name, then?

"A. Yes, sir.

"Q. Were you contacted about that date by a Mr. William Buck, also known as Bill Williams, a salesman?

"A. That's right.

"Q. Was any other salesman with him?

"A. Well, there was one elderly gentleman come before he did, and, yes, there was.

"Q. What were they selling?

"A. Aluminum siding.

"Q. Did you buy aluminum siding from Mr. Buck?

"A. Yes, I did.

"Q. Were all the conversations in the presence of both you and your wife?

"A. Yes, sir.

"Q. Did you and your wife sign a contract?

"A. Yes.

"Q. What was represented to you as the contract price of this aluminum siding?

"A. Thirty-seven, thirty-seven fifty seventy, I guess—thirty seven fifty.

"Q. That is $3,750.00?

"A. Right.

"Q. Did you believe that that was the total price?

"A. I sure did.

"Q. Did you later see a copy of the contract?

"A. Right.

"Q. Had the total contract price been changed?

"A. Yes, it had.

"Q. To what?

"A. Fifty-nine fifty-four seventy-six.

"Q. That is $5,954.76?

"A. Yes.

"Q. Calling your attention to Exhibit No. 1 in People against Buck, a certified copy of a deed of trust, do you recognize the signatures under the words 'signature of trustor'?

"A. Yes.

"Q. Whose signatures are those?

"A. It's myself and my wife's.

"Q. Do you recall signing such a document?

"A. No, I don't.

"Q. Did you ever see such a form with the other papers that you signed?

"A. No, I didn't.

"Q. Did you know at the time of the sale that you were signing a deed of trust?

"A. No.

"Q. Did the salesman ever tell you that there would be a trust deed placed on your property if you purchased the aluminum siding?

"A. He said there wouldn't be.

"Q. He said there would not be?

"A. Would not be.

"Q. Would you and your wife have purchased the aluminum siding if there had been a trust deed or lien placed against your property?

"A. Certainly would not.

"Q. Without going into the details of what they were, did the salesman make any other misrepresentations to you about the aluminum siding which you also relied upon?

"A. Yes."

It is obvious that that evidence is no more than barely sufficient to support an indictment of anybody for anything; certainly it does not support even a suspicion that petitioner had participated in any wrongdoing. The only reference to this defendant is the statement that he was the salesman. There is not a single word to connect him with the alleged change in purchase price, or with the procurement of any trust deed. For all that appears from the testimony as reported, petitioner had passed out of the picture when he secured the McClishes' agreement to buy siding, and someone, unidentified, thereafter presented papers to them for signature.[1]

Although, as we have indicated above, the transcript is far from telling a complete story of either of the crimes charged,[2] we conclude that, judged by the test above set forth, it was enough to support a finding that someone had committed the crimes of forgery and of grand theft. We can place no reliance on the portions of the testimony which deal with the claim that the sales price had been increased. Mr. McClish testified only that the price as it appeared in the contract had been raised from the original quotation; but he did not say why it was changed, nor that it had not been raised for some legitimate reason, nor that he and his wife had not agreed to the change, nor does he claim that he or his wife were unaware of the change when they signed the sale contract. But the testimony does support an inference that he and his wife had been led by trick or device to sign a trust deed "on their property," which was a form of security they had been told would not be exacted, and that they were unaware of the fact that they were signing such a security instrument.

## III

That the crime of forgery is committed when a defendant, by fraud or trickery, causes another to execute a deed of trust or other document, where the signer is unaware, by reason of such trickery, that he is executing a document of that nature, is now settled by *Buck* v. *Superior Court, supra,* (1965) 232 Cal.App.2d 153. Petitioner argues that, in any event, the procurement of the trust deed was not an act of grand theft. But, if the testimony herein is to be believed, someone obtained

---

[1] It is not, of course, suggested that the final question and answer added anything to the case.

[2] Compare the detailed account of a comparable transaction (which we are told involved this same defendant) as set forth in *Buck* v. *Superior Court* (1965) 232 Cal.App.2d 153 [42 Cal.Rptr. 527].

from the McClishes, by trick or device, an executed deed of trust. Admittedly, the document itself was stolen, within the meaning of section 484. ▮ At common law, the theft of a mere document could not be a felony, since the property right in the paper was merely nominal. But, in this state, the rule is otherwise. Section 492 of the Penal Code provides as follows: "If the thing stolen consists of any evidence of debt, or other written instrument, the amount of money due thereupon, or secured to be paid thereby, and remaining unsatisfied, or which in any contingency might be collected thereon, or the value of the property the title to which is shown thereby, or the sum which might be recovered in the absence thereof, is the value of the thing stolen." ▮ It follows that, if the deed of trust to which Mr. McClish referred in his testimony purported to secure a debt in excess of $200, the theft of the trust deed was grand theft. The fact that, by proving the trick or device, the signer might be able ultimately to clear his title is immaterial. (*Buck* v. *Superior Court, supra* (1965) 232 Cal.App.2d 153.)

The sufficiency of the indictment, and the correctness of the trial court's order denying petitioner's motion made under section 995, turn then on whether or not there was before the grand jury evidence other than the McClish testimony above quoted which would tie petitioner into the fraudulent procurement of the trust deed to which Mr. McClish referred and (insofar as the grand theft count is concerned) which would also show that the trust deed secured an obligation in excess of $200.

## IV

▮ By stipulation, we have before us for examination the original reporter's transcript from which we have quoted, and the entire original superior court file. Examination of the transcript discloses that, on page 2 thereof, the reporter has set forth an "index"; that that index lists as a "Grand Jury Exhibit" an exhibit referred to as "No. 1. Certified copy of a deed of trust," with a reference to page 5 of the transcript; and that, on page 5, appears the testimony (above quoted) wherein Mr. McClish identified as those of himself and his wife the signatures on an "Exhibit No. 1," then and there shown to him. Although it would be a far better practice to have it appear from oral statements, reported in the transcript proper, that a document identified by a witness had, in fact,

been presented to the grand jury for its consideration,[3] we conclude that this reference is enough to support a finding that, whatever the document was that was shown to Mr. McClish, that document became part of the evidence which the grand jury had considered.

When we examined the original superior court file, we discovered therein, in an envelope, a document which purports to be a certified copy of a deed of trust, dated as of May 3, 1963, executed by Bobby Ora McClish and Virginia L. McClish, in favor of Cardinal Construction Co., Inc., as beneficiary, as security for an obligation of $5,954.76, and covering "Lot 61, Parkwood Tract, Book 22, Page 70" of Ventura County. This document was witnessed by someone whose signature we cannot read, and it bears an acknowledgment before a notary public by "W. Buck," certifying that that person had witnessed the execution of the trust deed. On the reverse, this document is endorsed:

"Peo. against Buck

Exhibit I

Joan McGillis."

By an amended return, respondent assures us that this was the document shown to Mr. McClish at the grand jury hearing, that it was duly offered in evidence and received in evidence there, was returned to the superior court with the indictment and transcript, and that it was considered by the trial court. The return contains declarations from the clerk of the superior court, the trial judge, and Joan McGillis to that effect.

We accept the statements of the clerk and of the judge that the questioned document was before the superior court when it passed on the motion under section 995. We can accept the McGillis declaration insofar as that declaration advises us that she was the duly selected secretary of the grand jury—a fact of which the trial court had official knowledge—and that she had executed the endorsement above referred to. Under these circumstances, we conclude that the record, thus supplemented, discloses that the document in question was the one

---

[3]Under section 939.7 of the Penal Code, the grand jury is required to "weigh all the evidence submitted to it." We conclude that, once it appears that a document has been offered in evidence before a grand jury, it is unnecessary (though helpful) for the foreman or other officer to state that it is "received." Exclusion of evidence which should not have been received is for the court on a motion under section 995 and not for the grand jury, which takes into consideration and "weighs" everything "submitted."

shown to, and identified by, Mr. McClish at the grand jury hearing.

As a result of these facts, the record shows that someone had committed both forgery and grand theft. It also supports a legitimate inference that this petitioner was involved in those crimes. The identity of names supports the inference that the "W. Buck" who acknowledged the trust deed in question was the same person as the present petitioner; the acknowledgment by "W. Buck" that he had witnessed the execution of the deed is evidence that he had participated in the trick or device by which that execution was procured. No more was required, under the test above set forth, to sustain the indictment.

The alternative writ is discharged; the peremptory writ is denied.

Files, P. J., and Chantry, J. pro tem.,* concurred.

*Assigned by the Chairman of the Judicial Council.