[Crim. No. 34430. Second Dist., Div. Three. Aug. 23, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
MAURICIO MONTANO et al., Defendants and Appellants.

## Counsel

Michael W. McIsaac and Michael J. Udovic, under appointments by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**POTTER, Acting P. J.**—Defendants Mauricio Montano and Joe Montez appeal from judgments and sentences imposed after they were each found guilty by the court of "attempted murder, in violation of section 664/187, Penal Code," as charged in count II of the information. Count II specified that on January 22, 1978, defendants "did willfully, and unlawfully and feloniously and with malice aforethought attempt to murder Jimmy Moreno, a human being." Count III of the information, based on the same incident, charged defendants with "assault with a deadly weapon with intent to commit murder, in violation of Section 217, Penal Code." Both defendants were found not guilty of count III.[1] Various armed, use of firearms, and great bodily injury allegations were either left undetermined or found to be untrue, except an armed allegation against defendant Montez; he was found to have been armed when the attempted murder was committed.

The court expressly found that the murder attempted was "Murder in the First Degree."

---

[1] Other counts either were dismissed or resulted in acquittal and are not pertinent to the issues raised on this appeal.

Defendant Montez was sentenced to prison for a term of seven years, comprising the middle term of six years provided in Penal Code section 664 at the time the offense was committed when "the crime attempted [was] one in which the maximum sentence is life imprisonment or death," plus one year because he was armed. Defendant Montano was sentenced to a total of five years, comprising the lower term for the attempted murder without any enhancements.

The evidence, which included the testimony of the victim and of nonparticipant eyewitnesses, fully supports the following statement of facts. On Sunday evening, January 22, 1978, the victim, Jimmy Moreno, was standing on a street corner in East Los Angeles. Moreno, who was 15 years old, was a member of the "18th Street" youth gang. Defendants drove up in defendant Montano's car. Moreno asked where they were from, meaning what gang did they belong to, and they replied, "18th Street." Defendants then suggested that they all "go beat up the other gang," and when Moreno said, "Okay," they told him to get in the car, which he did. After Moreno was in the car and it was under way, defendants informed Moreno that they were in fact from "Geraghty," another youth gang named after the street of that name in the Belvedere area of Los Angeles County. Moreno asked to be let out of the car, but defendants refused. They then drove up into the hills in Belvedere overlooking City Terrace Park where they stopped on Beulah Circle. Some minutes later, a white Volkswagen automobile drove up and stopped near Montano's car. There were two women and one man in the Volkswagen. The man was codefendant Delgadillo. After speaking with defendant Montez, Delgadillo sent the two women with the Volkswagen down the hill around the corner. Delgadillo and Montez then told Moreno to get out of the car. When he did, Delgadillo twisted his arm behind his back and, accompanied by Montez, took him off the road, down a hill to a tree on a vacant lot. Defendant Montano remained in his car. Upon reaching the tree, Moreno was seated by it. A handgun was then produced by defendant Montez which, after changing hands a couple of times, was ultimately pointed at Moreno by Delgadillo and fired. The bullet struck Moreno in the neck, causing him to fall. Moreno's eyes remained open and Montez told Delgadillo to shoot him again. Delgadillo did so, this time hitting him in the cheek. Moreno closed his eyes and Montez and Delgadillo left him lying on the ground. Moreno heard the car drive away and about five minutes later he yelled for help; a man came and summoned a sheriff's deputy.

Meanwhile, defendants dropped Delgadillo off at the white Volkswagen where he rejoined the two women and left the area.

Moreno's injuries required his hospitalization for five months and left him paralyzed without sensation below the middle of his chest.

Both defendants and codefendant Delgadillo relied upon an alibi as their defense. They acknowledged their membership in Geraghty, which they characterized as a social club, and acknowledged that they all were "good friends."

### Contentions

Defendant Montano contends that (1) the evidence is insufficient to support his conviction of attempted murder, (2) the sentence imposed upon him pursuant to Penal Code sections 664 and 187 constitutes unconstitutional cruel and unusual punishment, and (3) his conviction should have been for assault with intent to commit murder.

Defendant Montez contends only that his crime, if any, was assault with intent to commit murder in violation of Penal Code section 217 and that he should be sentenced pursuant to that section.

The People controvert the contentions of both defendants.

### Discussion

*Summary*

Substantial evidence supports the conviction of defendant Montano of assault with intent to commit murder, a form of attempted murder. Both defendants, if guilty of any attempted murder, were guilty of this form of attempted murder, to wit, assault with intent to commit murder. Such being the case, their offense was punishable pursuant to Penal Code section 217, only.

*Substantial Evidence Supports*
*the Montano Conviction*

■ Montano challenges the sufficiency of the evidence to find him guilty of attempted murder or assault with intent to commit murder. He

concedes in his brief that substantial evidence supports a finding that he "knowingly aided or encouraged a battery on Moreno" and that he "expected some kind of injuries to result to Moreno." He contends, however, that he is not chargeable with the codefendant's "intent to kill which was unknown to appellant."

Both parties agree that Montano's status as an aider and abettor depended in this case upon a determination whether an assault with intent to commit murder was a "natural and reasonable or probable consequence[] of the acts [Montano] knowingly aided or encouraged." (*People* v. *Martinez* (1966) 239 Cal.App.2d 161, 179 [48 Cal.Rptr. 521].)

Montano contends that comments of the court made in connection with the rendition of its decision show that it was not found beyond a reasonable doubt that he had knowledge of his codefendant's intent to murder Moreno.[2]

The court's conviction of Montano as an aider and abettor constitutes its decision and finding in that respect. The comments relied upon by Montano are not available to impeach the finding implicit in the conviction. In *People* v. *Grana* (1934) 1 Cal.2d 565, 570-571 [36 P.2d 375], the court said: " 'It seems clear to us that neither the court's remarks during trial nor his concluding "opinion" can be resorted to on appeal in any way as findings, conclusions of law, instructions or remarks as though to a jury. When a defendant in a criminal case waives a jury he agrees that the judge shall try both law and fact according to the legal machinery at hand therefor. Any appeal therefrom is based upon the record. The judge's opinion may be of use to the appellate court as an aid to a proper understanding of the case, but it is not, strictly speaking, a part of the

---

[2] The court's comments in this respect made both at the conclusion of the trial and at the probation and sentencing are equivocal. The court said at one point that he did not think that either defendant Montez or defendant Montano had decided what to do about Moreno before they met Delgadillo, and that he could not say "beyond a reasonable doubt" that Montano saw "the placing of the gun in the small of the back of Moreno." On this basis, Montano was found not to have been armed with a gun. Also, at the time of sentencing the court commented that at the time they picked Moreno up off the street, Montano and Montez "probably had in mind just working the victim over or scaring him," and "it wasn't until after the time Delgadillo arrived upon the hill . . . that they apparently got enthusiastic about going the full length." However, the court also said, "it was not clear *until the meeting of the three defendants* up there [Beulah Circle] what was supposed. I presume at that time they decided to waste this young boy who was obviously an 18th Street member." (Italics added.)

record. In the course of the trial the court may entertain an erroneous opinion as to the law and tentative but wrong opinion as to fact, and give expression thereto. None of these matters have any place upon appeal.' " (See also *People* v. *Simmons* (1971) 19 Cal.App.3d 960, 964 [97 Cal.Rptr. 283].)

The real question before this court is whether there is substantial evidence in the record to support a finding that Montano aided and abetted the attempt to murder Moreno. We are satisfied that there is. *People* v. *Butts* (1965) 236 Cal.App.2d 817 [46 Cal.Rptr. 362], upon which Montano places great reliance, as "[t]he most similar case," involved different circumstances. The fighting in which both Butts and a codefendant were involved was simply common, drunken brawling. It was in that context that the court said (*id.,* at p. 837): "The evidence shows Butts' awareness of participation in a fist fight, not a knife fight." The court recognized, however, that under other circumstances where "death was a 'reasonable and natural consequence' " (*id.,* at p. 836), an aider and abettor to an assault may be guilty of murder and said (*ibid.*): "It is not necessary that the primary actor expressly communicate his unlawful purpose, if that purpose is apparent from the circumstances and the secondary actor nevertheless assists in its accomplishment. (*People* v. *Grischott,* 107 Cal.App.2d 631, 634 [237 P.2d 712].) An unarmed aider and abettor may be responsible in the same degree as the actual perpetrator. (*People* v. *Perkins,* 37 Cal.2d 62, 64 [230 P.2d 353].)"

More nearly in point is *People* v. *Martinez, supra,* 239 Cal.App.2d 161, where the court upheld a murder conviction on the basis that death was " 'not an unreasonable result to be expected' " (*id.,* at p. 178) from participation in a punitive response to a gang attack upon defendant's friend the week previous.

The facts in the case at bench are even stronger. The evidence was clear that the attack upon Moreno was an aspect of gang warfare and that he was attacked on the basis of his membership in the rival 18th Street gang. The frequency with which such gang attacks result in homicide fully justified the trial court in finding that homicide was a "reasonable and natural consequence" to be expected in any such attack. It is, therefore, clear that Montano's guilt of aiding and abetting an attempted murder does not depend upon his awareness that Delgadillo or Montez, or both of them, had deadly weapons in their possession.

■ *The Punishment Applicable to*
*Both Defendants Is That Provided*
*by Penal Code Section 217*

There was no evidence of any attempted murder in this case except that which showed an assault with an intent to commit murder. Though murder[3] and attempted murder[4] both can be committed without commission of an assault with intent to commit murder, the form of attempt here involved clearly was that which comprises an assault with intent to commit murder. The question posed on the present record, however, is whether it should be punished pursuant to Penal Code section 217 which specifically sets the punishment for "[e]very person who assaults another with intent to commit murder," or pursuant to Penal Code section 664, which provides generally for the punishment of attempts. At the time of the offense, the pertinent portion of section 664 read:

"Every person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, *where no provision is made by law for the punishment of such attempts,* as follows: 1. If the offense so attempted is punishable by imprisonment in the state prison, the person guilty of such attempt is punishable by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense so attempted; provided, however, that if the crime attempted is one in which the maximum sentence is life imprisonment or death the person guilty of such attempt shall be punishable by imprisonment in the state prison for a term of five, six or seven years." (Italics added.)

Inasmuch as the court found that the murder of Moreno which was attempted was first degree, for which the maximum punishment at that time was life imprisonment or death (Pen. Code, § 190), the term pursuant to section 664 was five, six or seven years, whereas the term specifically provided in Penal Code section 217 was at that time two, three or four years. Therefore, the specific punishment provided for by section 217 was substantially less than that prescribed by the combination of the general provision of Penal Code section 664 and the punishment specified in Penal Code section 190. A similar relationship between the

---

[3]See *People v. Burden* (1977) 72 Cal.App.3d 603, 614-621 [140 Cal.Rptr. 282], where a defendant's failure to perform the legal duty of providing food for his helpless child was held to justify his conviction of second degree murder.

[4]See *People v. Parrish* (1948) 87 Cal.App.2d 853, 856 [197 P.2d 804], where defendant was apprehended outside his intended victim's home where he had gone with a gun in preparation for killing her, before he had any opportunity to confront the victim.

punishments provided pursuant to these sections has existed for some time and it has been the subject of judicial scrutiny in several decided cases.

The earliest such case is the decision of this division in *People* v. *Meriweather* (1968) 263 Cal.App.2d 559 [69 Cal.Rptr. 880]. In *Meriweather,* the defendant shot his ex-wife three times after announcing his intent to kill her. He had been charged with and was found guilty both of attempted murder and assault with intent to commit murder after a trial by the court. He was sentenced pursuant to Penal Code section 664 to a term "of not more than 20 years," and execution of the lesser sentence for assault with intent to commit murder ("not less than one nor more than fourteen years") was stayed pending completion of the sentence for attempted murder, the stay to become permanent upon its completion. *Meriweather* pointed out that section 664 was "a general statute applicable only where no other provision for punishment of an attempt is made." (263 Cal.App.2d at p. 563.) Without specifically answering this contention, it was held that conviction under both sections was permissible, and that the prohibition of Penal Code section 654 against double punishment was satisfied by the suspension of execution of the lesser sentence. The entire discussion of the matter follows (263 Cal.App.2d at pp. 563-564):

"Where, as here, an attack is made upon the person of another with a deadly weapon in such manner, coupled with the threat to kill, that it leaves no reasonable doubt that the perpetrator intended to murder his victim, the perpetrator has committed the crime of assault with intent to commit murder and has also committed the crime of attempt to murder. The crime of attempt to murder, however, does not require a violent attack with a deadly weapon upon the person of the victim, as it may be accomplished by other methods, and while simple assaults and felonious assaults are, analytically, attempts, the Legislature by statute has made them distinct offenses with specified punishments. (See 2 Witkin, Cal. Crimes (1963) § 1047(c), p. 992.) Here, the Legislature, by the enactment of section 217 of the Penal Code has made the crime of assault with intent to commit murder an offense distinct from that of attempted murder and has provided a specific punishment upon conviction thereof. Had the Legislature intended that the punishment for the crime of attempted murder should be the same as the punishment for the crime of assault with intent to commit murder it would have been a very simple matter for it to have so provided. It has not done so.

"It was proper, under the facts of the case and under the pleadings, for the trial court to have found the defendant guilty of both the crimes of attempted murder and assault with intent to commit murder. Because the crimes were committed in the same course of criminal conduct, the defendant may be punished for the crime carrying the greater penalty but not for both such crimes. (*People* v. *Tideman,* 57 Cal.2d 574, 586 [21 Cal.Rptr. 207, 370 P.2d 1007].) The trial court, however, suspended the execution of the sentence pronounced for the crime of assault with intent to commit murder. This suspension of the sentence has avoided the double penalty proscribed by section 654 of the Penal Code. (*In re Wright,* 65 Cal.2d 650, 655-656 [56 Cal.Rptr. 110, 422 P.2d 998], fn. 4; *People* v. *Niles,* 227 Cal.App.2d 749, 755-756 [39 Cal.Rptr. 11]; *People* v. *Cooper,* 256 Cal.App.2d 500, 502 [54 Cal.Rptr. 282].)"

*People* v. *Johnson* (1978) 81 Cal.App.3d 380 [146 Cal.Rptr. 476], in a comparable fact situation, reached a contrary result. As in *Meriweather,* the defendant had been charged with and convicted both of attempted murder and of assault with intent to commit murder, but the trial court sentenced him for the term prescribed by law on each count, with the terms to run concurrently. Johnson pointed out that inasmuch as attempted murder is necessarily included within the offense of assault with intent to commit murder, he could not be found guilty of both. The court agreed, stating in this respect (*id.,* at p. 387): "Where one offense is necessarily included in another, both double conviction (*People* v. *Greer,* 30 Cal.2d 589, 597-598 [184 P.2d 512]) and double punishment are prohibited (*People* v. *Knowles,* 35 Cal.2d 175 [217 P.2d 1]; *People* v. *Wilson,* 50 Cal.App.3d 811 [123 Cal.Rptr. 663]). An assault with intent to commit a crime necessarily embraces an attempt to commit said crime (*People* v. *Rupp,* 41 Cal.2d 371, 382 [260 P.2d 1])."

The court noted the decision in *Meriweather* and distinguished it in the following fashion (81 Cal.App.3d at pp. 387-388 [69 Cal.Rptr. 880]): "In *Meriweather,* however, the court did not mention the prohibition of double conviction (*People* v. *Greer, supra,* 30 Cal.2d pp. 597-598), and was not faced with a problem of double punishment. The People also rely on *People* v. *Ramirez,* 2 Cal.App.3d 345 [82 Cal.Rptr. 665], and *People* v. *Provencher,* 33 Cal.App.3d 546, 549 [108 Cal.Rptr. 792]. Neither is helpful here, as both speak to the question of whether two crimes are identical and do not deal with the question of necessarily included offenses. We think that the codification of separate offenses for one act does not sanction double conviction. [Fn. omitted.]"

The *Johnson* court thus reached the contrary conclusion to that reached in *Meriweather* and left in effect the lesser punishment of the including offense of assault with intent to commit murder, rather than the greater punishment of the necessarily included offense of attempted murder, on the ground that conviction of the including offense precludes conviction of the included offense. Insofar as *Johnson* points out *Meriweather's* failure to consider the prohibition against double conviction, it is a useful contribution to the solution of our problem. The basis, however, upon which it imposed the lesser punishment is not applicable in this case because defendants here were not convicted of the including offense of assault with intent to commit murder. Consequently, conviction of attempted murder is not precluded on that basis.

*People* v. *Heffington* (1973) 32 Cal.App.3d 1 [107 Cal.Rptr. 859], contains the most persuasive analysis to date. In that case the court said (*id.,* at pp. 10-11): "Penal Code section 664 fixes the penalties *for crime attempts not punishable under other statutes.* An attempt to commit a crime may occur when the defendant's criminal goal is frustrated by extraneous circumstances. (*People* v. *Staples,* 6 Cal.App.3d 61, 67 [85 Cal.Rptr. 589].) *Assault with intent to commit murder is one form of attempted murder, but it is punishable under Penal Code section 217 rather than section 664.* The crime of assault with intent to commit murder requires proof of a specific intent to murder, *but without regard to any distinction between first and second degree murder.* (See *People* v. *Bernard,* 28 Cal.2d 207, 214 [169 P.2d 636]; *People* v. *Moles,* 10 Cal.App.3d 611, 615-616 [89 Cal.Rptr. 226]; *People* v. *Meriweather,* 263 Cal.App.2d 559, 563 [69 Cal.Rptr. 880]; *People* v. *Mason,* 183 Cal.App.2d 168, 175 [6 Cal.Rptr. 649].)" (Italics added.)

An examination of both section 664 and of the chapter of the Penal Code of which section 217 is a part demonstrates the validity of the observations made in *Heffington* and compels the conclusion that defendants in this case are punishable only pursuant to Penal Code section 217. Section 217 is included in chapter 5, title 8, part 1, which is entitled "ATTEMPTS TO KILL." It deals specifically with various such attempts for which specific punishment is imposed. Sections 216 and 217 provide the same punishment (and did so at the time of the offense here involved) where the intended victim is a private citizen. Section 217.1 imposes a higher punishment where there is an attempt to kill certain public officers. Section 217 makes no distinction between assaults with intent to commit first degree murder, as opposed to assaults with intent to commit second degree murder. It cannot be argued that only second

degree murder attempts are covered because section 216 imposes the same punishment where the attempt to kill is by poison, a killing which if accomplished would by definition be a first degree murder (Pen. Code, § 189). ■ Furthermore, as a penal statute, section 217 must be construed " 'as favorably to the defendant as its language and the circumstances of its application may reasonably permit; . . . the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute.' (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)" (*People* v. *Walker* (1976) 18 Cal.3d 232, 242 [133 Cal.Rptr. 520, 555 P.2d 306].)

■ The conclusion is thus inescapable that assault with intent to commit murder is a form of attempted murder which is specifically punishable under Penal Code section 217. It, therefore, is not an attempt to commit a crime "where no provision is made by law for the punishment of such attempt[]," governed by Penal Code section 664.

There remain numerous other crimes for which the maximum sentence is life imprisonment or death, the attempt to commit which may be punishable pursuant to section 664. For example, Penal Code section 37 imposes the punishment of death or life imprisonment without possibility of parole for treason; Penal Code section 209 provides for life imprisonment as punishment for kidnaping for ransom; and Penal Code section 128 imposes death or life imprisonment without possibility of parole for procuring the execution of an innocent person by perjury or by subornation of perjury. Also, attempted murders not involving assaults (see examples, *supra*) appear to be governed by Penal Code section 664. We express no opinion, however, as to the validity of the greater punishment imposed by section 664 for these attempts. Some of them, at least, where the attempt is thwarted before reaching the point of a direct assault, appear to involve less culpability than attempts which progress to the point of an assault with intent to commit murder. (See, e.g., *People* v. *Parrish, supra,* 87 Cal.App.2d 853.) Any denial of equal protection or imposition of cruel and unusual punishment involved in such cases does not, however, give rise to a constitutional violation as against these defendants who are susceptible only to the lesser punishment. The disparity in this respect might, however, well be corrected by the Legislature with a uniform punishment for all attempted homicides of the same degree established.

The defendants must, therefore, both be resentenced by the trial court. In sentencing defendants pursuant to Penal Code section 217, the court

will be free to depart from the earlier choice of the lower and middle terms made for defendants Montano and Montez, respectively, under Penal Code section 664, subdivision 1, for an attempt at an offense punishable by life imprisonment, when choosing the term under section 217 which applies to all assaults with intent to commit murder of any degree.

### *Disposition*

The judgments of conviction of attempted murder of both defendants are affirmed. The case is remanded, however, for resentencing in accordance with the views above expressed.

Cobey, J., and Allport, J., concurred.