[Crim. No. 42580. Second Dist., Div. Five. Aug. 9, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EARL GIBBS, Defendant and Appellant.

**COUNSEL**

Howard A. Lipton, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and Lisa B. Lench, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, J.**—Defendant was charged in count I, attempted murder (Pen. Code, §§ 187/664), count II, rape (Pen. Code, § 261, subds. (2), (3)), count III, assault by means of force likely to produce great bodily injury and with a deadly weapon (Pen. Code, § 245, subd. (a)), count IV, robbery (Pen. Code, § 211), count V, kidnaping (Pen. Code, § 207). As to counts I and V, a use of a deadly and dangerous weapon within the meaning of Penal Code section 12022, subdivision (b), was alleged. As to each count, intent to inflict great bodily injury within the meaning of Penal Code section 12022.7 or section 12022.8 was alleged. Two prior felony convictions within the meaning of Penal Code section 667.5, subdivisions (a) and (b), were also alleged. The verdicts found defendant guilty on all counts and allegations except as to count V, the weapon use was stricken.

The facts are that Laurie N. and a friend went to Jumbo's bar. The two women had a drink and while at the table defendant came over and joined

them. Defendant and Laurie had been previously introduced to each other by Laurie's fiancé. They closed the bar and Laurie accepted a ride to pick up her daughter and then was to join her girl friend at a Denny's restaurant for something to eat. Defendant drove Laurie to his house and Laurie went into the residence to wait for him to write a note of some sort. Laurie sat on the couch and in due course defendant joined her and commenced pressing his romantic attentions upon her. She resisted. He insisted. She defended herself and in the course of the struggle she said, "Nobody rapes me." Defendant had one hand on Laurie's throat and with the other on his zipper appeared to be removing his pants. Laurie said defendant would have to kill her first. Defendant responded, "I will." Laurie passed out only to revive finding herself clothesless with defendant on top of her body. Laurie had pain in her throat, her head and in her vaginal area. As Laurie revived, defendant threw her over his shoulder and went outside to the car where Laurie was deposited on the front passenger side floor. Defendant continued to choke Laurie, causing partial loss of consciousness. Defendant drove to Griffith Park near Immaculate Heart College where he stopped the car. He took her to an area of some trees where she was dropped on the ground. Defendant walked away and then returned and stabbed Laurie several times with a knife. Laurie pleaded and cried until she lost her voice. She saw she was bleeding from the wounds. Laurie became motionless and defendant stopped stabbing her and began burying her in dirt and leaves. Defendant finally left and drove away. Laurie crawled to a walkway where she remained until found by a campus security guard. Medical assistance was procured and six hours of surgery followed. Though Laurie reported a rape, no vaginal testing was performed for approximately 40 hours. No evidence of spermatozoa or seminal fluid was found by the testing.

The defense admitted the meeting at the bar and to driving Laurie to Vermont and Hollywood. The car battery died and defendant left to obtain a jump start. On his return to the car, Laurie was gone and he did not see her thereafter. During the time the crimes were committed, defendant was home asleep.

■ Defendant first contends that he should have been sentenced for assault with intent to commit murder rather than attempted murder. Defendant relies upon *People* v. *Lopez* (1980) 110 Cal.App.3d 1010 [168 Cal.Rptr. 378]; *People* v. *Montano* (1979) 96 Cal.App.3d 221 [158 Cal.Rptr. 47]; and *People* v. *Gray* (1979) 91 Cal.App.3d 545 [154 Cal.Rptr. 555]. The prosecution relies upon *People* v. *Singleton* (1980) 112 Cal.App.3d 418 [169 Cal.Rptr. 333]. We concur in the *Singleton* approach and conclude that the mere fact that Singleton was found guilty of attempted murder *in the first degree* is no valid reason to void the *Singleton* rationale. In *Singleton,* at pages 424-425, the court stated:

"Singleton's final contention is that he was improperly sentenced under sections 664 and 187 for attempted murder, rather than for the more specific offense of assault with intent to commit murder under section 217 providing for a lesser penalty. He cites *People* v. *Montano* (1979) 96 Cal.App.3d 221 [158 Cal.Rptr. 47]; and *People* v. *Gray* (1979) 91 Cal.App.3d 545 [154 Cal.Rptr. 555], which do indeed support his contention. (See also the more recent similar decision in *People* v. *Lopez* (1980) 110 Cal.App.3d 1010 [168 Cal.Rptr. 378].) Section 664, the general attempt statute, applies only 'where no provision is made by law for the punishment of such attempts.' *Montano, Gray* and *Lopez* declare that where there is no evidence of any attempted murder other than an assault with intent to murder, a defendant is entitled to be punished under the more specific statute which expressly proscribes his conduct. The shocked legislative response to *Montano* and *Gray* was to repeal section 217 (Stats. 1980, ch. 300, eff. Jan. 1, 1981).

"We are in agreement with the principle announced in *Montano, Gray* and *Lopez*; that is, a specific statute prevails over the general statute. But we are of the opinion that the principle was not applicable to the facts in those cases; nor is it applicable to the facts in the instant case. In the cases cited, as here, there *was* evidence of attempted murder other than an *assault* with intent to commit murder; i.e., the assaultive conduct exhibiting an intent to commit murder resulted in the use of force and in actual injury. The use of force and actual injury are not elements of the crime of assault with intent to commit murder. (Cf. *People* v. *Yeats* (1977) 66 Cal.App.3d 874, 878 [136 Cal.Rptr. 243].) A violation of section 217 is committed and the crime is complete when, with the requisite intent, there is 'an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another.' (§ 240.) When force is used and actual injury is inflicted, the criminal conduct is more opprobious and the consequences to the victim and to society much graver. It is logical to presume that in enacting section 217 and in providing for a lesser penalty than that which may be imposed for attempted murder, the Legislature intended section 217 to punish conduct constituting an assault but falling short of actual force and injury. This was, we infer, perceived by the court in *People* v. *Meriweather* (1968) 263 Cal.App.2d 559 [69 Cal.Rptr. 880]. In *Meriweather* the defendant was charged with both attempted murder under sections 664 and 187 and assault under section 217. The evidence disclosed the defendant, having declared an intent to kill, fired a gun at the victim, causing three bullet wounds. On appeal, he contended it was error to convict him of attempted murder; that he should have been charged solely with assault with intent to commit murder and the trial court should have been limited to that charge. He urged, as does Singleton, that section 664 was intended by the Legislature to punish attempts only where no provision is made by law for the punishment of a particular attempt and, therefore, the enactment of section

217 made section 664 inapplicable. The court rejected the defendant's contention, holding that section 217 defined a crime distinct from attempted murder and stating: 'It was proper, under the facts of the case and under the pleadings, for the trial court to have found the defendant guilty of both the crimes of attempted murder and assault with intent to commit murder.' (*People* v. *Meriweather, supra,* at p. 563.)" (Italics in original.)

■    Defendant contends the evidence does not support the conviction for rape. He is in error. *People* v. *Lopez, supra,* 110 Cal.App.3d 1010, relied upon by defendant for a different point and disapproved by us on that point, is nevertheless excellent authority supporting the conviction for rape. (See p. 1018.) In that case the defendant contended that the victim did not establish that a penis was the instrument which caused penetration of the victim's anus. There, as here, the victim was unconscious. There, as here, the victim concluded she had been violated. There, as here, there was pain and injury to the area involved and the victims so testified. The facts that defendant fondled Laurie against her will; defendant choked her into unconsciousness while on top of her and in the process of removing his trousers; the removal of all of her clothes and his body being against hers while she regained consciousness; the "very bad" pain which then existed "between [her] legs," i.e., her vagina, adequately support the inference that the rape occurred. The fact that there was no medical confirmation does not make reliance upon the victim's testimony insufficient.

The judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.