McDonald v. State.

Opinion delivered October 9, 1922.

1. INDICTMENT AND INFORMATION—SUFFICIENCY OF EVIDENCE BEFORE GRAND JURY.—In a prosecution for carnal abuse, in which defendant moved to quash the indictment on the ground that the grand jury had no legal evidence before it, evidence *held* sufficient to sustain an indictment.

2. GRAND JURY—EVIDENCE ADMISSIBLE ON INVESTIGATION OF CARNAL ABUSE.—On investigation before the grand jury of a charge of carnal abuse of a girl under the age of consent, it was competent

to prove that accused and prosecutrix had associated together and had opportunities for sexual intercourse, and that a child was born to her.

3. GRAND JURY—INVESTIGATION OF CARNAL ABUSE—EVIDENCE.—On investigation before the grand jury of the charge of carnal knowledge of a girl under age of consent, during which the prosecutrix refused to answer whether defendant had had intercourse with her, it was competent to ask her whether she had not testified before the examining magistrate that defendant had had intercourse with her, and, upon her answering in the affirmative, to further ask her whether or not she was telling the truth, and on her refusal to answer it was for the grand jury to determine whether she had testified to the truth before the examining magistrate, though she afterwards changed her story.

4. INDICTMENT AND INFORMATION—SUFFICIENCY OF EVIDENCE.—If there was any legal evidence before the grand jury to sustain the finding of an indictment, the court cannot inquire into the sufficiency of the evidence or set it aside because some illegal evidence was received.

5. INDICTMENT AND INFORMATION—GROUNDS FOR QUASHING INDICTMENT.—Under Crawford & Moses' Dig., § 3057, specifying the only grounds on which an indictment may be quashed, it is not permissible to quash an indictment because of the introduction before the grand jury of the illegal evidence or of the want of any testimony at all to support the return of an indictment.

6. INDICTMENT AND INFORMATION—ADMISSION OF ILLEGAL EVIDENCE. —Crawford & Moses' Dig., § 2988, providing that the grand jury can receive none but legal evidence, is directory only.

7. RAPE—ADMISSIBILITY OF EVIDENCE.—In a prosecution for carnal abuse of a girl under the age of consent, in which the prosecutrix exhibited to the jury a child to which she claimed to have given birth, as result of intercourse with defendant, and was allowed to testify as to the particular occasion and time of the intercourse with the defendant when the conception took place, exclusion of testimony that about the same time she was associating with others in a manner warranting a conclusion that they had opportunities for, and might have had, intercourse, held reversible error.

8. RAPE—INTERCOURSE OF PROSECUTRIX WITH OTHERS.—In a prosecution for carnal abuse of a girl under the age of consent, her illicit relations with other men are immaterial unless the State undertakes on direct examination to corroborate her testimony by introducing a child which she testifies was the result of the sexual intercourse with the accused, in which case testimony

tending to prove that another might have been father of the child is competent and relevant.

9. WITNESSES—CONTRADICTORY STATEMENTS OF PROSECUTRIX.—In a prosecution for carnal abuse of a girl under the age of consent, in which the defendant did not ask prosecutrix on cross-examination questions concerning her testimony before the grand jury, testimony tending to elicit contradictory statements made by her before that body was inadmissible, for want of a proper foundation therefor.

10. WITNESSES—IMPEACHMENT AS TO COLLATERAL MATTERS.—Where a prosecutrix in a prosecution for carnal abuse is asked as to specific acts of alleged intercourse with others, and she answers in the negative, the defendant is bound by her answers, and cannot impeach her with reference thereto.

11. DEPOSITIONS—QUASHING.—Depositions in a criminal case, not taken by consent nor pursuant to an order of court under Crawford & Moses' Dig., § 3112, were properly quashed.

Appeal from Greene Circuit Court, Second Division; *R. E. L. Johnson,* Judge; reversed.

*M. P. Huddleston* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

WOOD, J. Appellant appeals from a judgment of conviction on an indictment charging him, in good form, of the crime of carnal abuse of one Rebecca George. The indictment was returned by the grand jury of Greene County on the 7th day of December, 1921.

1. The appellant moved to quash the indictment at the May term of the Greene Circuit Court, 1922, upon the sole ground that there was no legal evidence before the grand jury upon which to base the indictment. Appellant relies upon section 2988, Crawford & Moses' Digest, which reads as follows: "The grand jury can receive none but legal evidence." At the hearing on the motion the court permitted the appellant to introduce as a witness the stenographer who took down the testimony of the witnesses before the grand jury that returned the indictment against the appellant, and permitted the stenographer to read the testimony of the witness, Rebecca George, taken before the grand jury in the investigation

of the alleged crime of carnal abuse of Rebecca George by appellant.

In her testimony before the grand jury Rebecca George stated that she had been acquainted with the appellant some four or five years. She was asked whether he had ever had any improper relations with her, and refused to answer. She was asked whether or not she had testified in Squire Hayes' court that Tony McDonald had sexual intercourse with her, and she stated that she remembered testifying, but was not going to inform the grand jury whether she was telling the truth then or not. She was then asked whether she remembered saying that she did tell it, and answered, "Yes." She was asked whether the things she told there were the truth and answered, "I am not going to tell you anything." She admitted that her baby was there. The grand jury asked who was the father of her baby, and she refused to tell. She stated that she remembered telling the prosecuting attorney about it, but refused to tell the grand jury anything about it. Further along in her examination she was asked this question: "Do you remember telling us that Tony McDonald was the father of the child?" Answer, "I told you, but you didn't know if I told you the truth." She was further asked, "You told us that Tony McDonald was the father of the child, and that Tony got you to sign a letter saying that he was not the father of the child, but that he was the father of the child?" Answer, "Yes sir." Question, "Was that the truth?" Answer, "I am not going to tell you." She was recalled later before the grand jury, and in answer to questions stated that her baby was not Tony's baby; that it was Hughie Warren's baby, and further stated that Tony had not had at any time sexual intercourse with her, and that her prior statements to the effect that Tony had sexual intercourse with her were false.

The witness next read the testimony of Mrs. Wiley George, the mother of Rebecca George, taken before the grand jury. Mrs. George stated that upon ascertaining that her daughter was *enceinte,* she asked her daughter

who was the father of the child, and Rebecca stated that it was Tony's. She then interviewed appellant in regard to the matter, and he admitted taking Rebecca to places, but denied having intercourse with her. Also Wiley George, father of Rebecca George, testified before the grand jury that the appellant was the father of the child. He stated that Tony denied it, and said that if he had done it he knew a half dozen other men who had been with her beside himself, and further, that he could get by with anything he did in Paragould.

The testimony of Mrs. Hancock, taken before the grand jury, was to the effect that she and Mrs. Bob McDonald talked about the trouble that Tony McDonald and Rebecca George were in, and Mrs. McDonald stated that it was Tony's child; that they had been together in her house. She stated that Rebecca had intercourse with Tony right in her own house—she heard them, and accused Rebecca of it, and Rebecca admitted it, and told witness about it. This witness further stated that after Hughie Warren was killed she heard Mrs. Bob McDonald say that they were going to get Rebecca to swear it on Hughie Warren—they were going to do that to save Tony. There was further testimony heard before the grand jury in the investigation of the charge upon which it returned the indictment, but the above is sufficient to show that the grand jury did have before it some legal evidence. It was competent upon the investigation of such a charge to prove that the appellant and Rebecca George had associated together and had opportunities for sexual intercourse, and that a child was born to Rebecca George. It was also competent to ask Rebecca George if she had not testified before the examining magistrate that the appellant had sexual intercourse with her, and, upon her answering in the affirmative, to further ask her whether or not she was then telling the truth. After refusing to answer whether she had told the truth or not, it was for the grand jury to determine whether she had testified to the truth before the examining magistrate, and

it was still within the province of the grand jury to determine whether her testimony before the examining magistrate was the truth, notwithstanding she afterward changed her story.

Therefore, it will be readily seen that the case before us is not one where the grand jury returned an indictment without having any legal evidence whatever upon which to ground its charge. The facts clearly differentiate this case from those cases set out in appellant's brief, and upon which appellant relies, to the effect that where no evidence at all has been heard by the grand jury, or where an indictment has been returned upon wholly incompetent testimony, the indictment may be quashed upon motion before plea. As was said in *State* v. *Logan,* 1 Nevada 509 : ''But the reason of the rule will not authorize the setting aside the indictment, merely because evidence not of the best legal character is received and considered. If there be nothing to support the bill but evidence clearly incompetent, and which would not be admissible at the trial, as the sole testimony of a person rendered incompetent by conviction of an infamous crime, the indictment may be quashed before plea (1 Wharton's American Criminal Law, sec. 493), but where there is the slightest legal evidence, the court cannot inquire into its sufficiency, or set it aside, because some illegal evidence was received with it.''

Therefore, appellant was not entitled to have the indictment quashed under the above statute, even if the doctrine of our court were in harmony with the doctrine of the cases upon which appellant relies in his brief. But our own court, in *State* v. *Fox,* 122 Ark. 197, has definitely ruled that a motion to quash an indictment can only be made upon one of the following grounds: (1) A substantial error in the summoning or formation of the grand jury. (2) That some person other than the grand jurors was present before the grand jury when they finally acted upon the indictment. (3) That the indictment was not found and presented as required by law.

The above grounds are those contained in sec. 3057, C. & M. Digest.

Construing this statute in *State* v. *Fox, supra,* we said: "The grounds above specified exclude any right to make such motion for any other than one of the specified causes. The motion to quash the indictment for want of legal and sufficient evidence adduced before the grand jury to warrant the finding thereof certainly does not come within the first and second subdivisions of said section, and we do not think it can be said to be included within the third subdivision that the indictment was not found and presented as required by law. * * * * It was never the purpose of the law, as clearly indicated by the statute designating the only grounds upon which a motion to quash, or set aside, an indictment can be made, that such motion could be made because of the introduction of illegal testimony or want of any testimony at all to support the return of an indictment, and thus bring the testimony and proceedings before the grand jury for review by the trial court before a plea to the charge by the accused. The grand jury is an inquisitorial body, the proceedings of which are intended to be kept secret, and cannot be examined and reviewed by a trial court upon a motion to set aside or quash an indictment, except for causes specified in the statute."

Section 2988, C. & M. Digest, which provides that "the grand jury can receive none but legal evidence," in view of the holding of this court in *State* v. *Fox, supra,* is directory to the grand jury only, and its failure to observe the statute does not give the accused the right to set aside or quash an indictment on account of such failure. Under our Constitution (art. 2, § 8) and statutes (§§ 2977, 3006, C. & M. Digest) the grand jury is an inquisitorial and accusatory body. Such being the case, when it has returned into court an indictment accusing a person of crime, such "an indictment is only an accusation and does not even raise a presumption of guilt, and in itself can do nothing except to serve as an accusation." Any irregularity in the finding and return

of it by the grand jury does not deprive the accused of any substantial right. *Worthen* v. *State*, 82 Ark. 321; *Latourette* v. *State*, 91 Ark. 65. When the grand jury has returned an indictment accusing a person of crime without hearing any legal evidence, such a proceeding upon the part of the grand jury does not deprive the accused of any right guaranteed to him under the Constitution. Therefore, the accused cannot have such an indictment or accusation quashed or set aside except for some cause designated by the statute and in the manner therein provided. In the absence of a statute authorizing it, it is the general rule that the court will not inquire whether there was sufficient evidence before the grand jury on which to find an indictment. 14 R. C. L. 49; 28 L. R. A. 324, note 3; note to *In re William B. Kennedy*, 1 A. & E. Ann. Cases, p. 842; 12 Standard Ency. Proc. 620, and cases cited in note; *Lee* v. *State*, 148 S. W. 567, 40 L. R. A. (N. S.) 1132, note.

Our lawmakers, as we have seen, in § 3057, C. & M. Digest, have expressed the grounds upon which an indictment can be quashed. The expression of these grounds excludes all others, and the fact that the grand jury has not heard any legal evidence, or has heard evidence that is not legal and competent, is not made one of the grounds for the quashing of an indictment. The trial court, therefore, did not err in overruling appellant's motion to quash.

2. The prosecutrix, Rebecca George, testified that she was under sixteen years of age when the appellant had sexual intercourse with her; that as a result of such intercourse she became pregnant and later gave birth to a child. Over the objection of appellant, she exhibited the child to the jury, and she was allowed to testify that the appellant was the father of the child, and she was allowed to testify to the particular occasion and time of the sexual intercourse with the appellant when the conception took place. The appellant offered to show by a certain witness that the prosecutrix had admitted to her that the child belonged to Hughie Warren, and also offered

to show by certain witnesses that about the time the conception took place, according to her testimony, she was associating with one Hughie Warren and one Bob McDonald, on certain occasions, in a manner that would warrant the conclusion that they had opportunities for, and might have had, sexual intercourse with her also about the time that she alleged the conception took place. The court, over the objection of the appellant, rejected such testimony.

In *Fuller* v. *State,* 205 Pacific 324, the charge was the crime of rape on a negro girl under the age of consent. The accused offered to show that the child, which was produced by the prosecutrix and referred to by her as the result of an act of intercourse with the accused on a certain day, was the child of another. The court said: "Stated shortly and simply, he (the accused) had a right to account for the result, *i. e.,* the child, by showing that it was due to another cause, that is, the sexual intercourse of another. His right to do this was coequal with the right of the State to support the allegation of rape by showing the outcome of the act. If appellant could show that he was not the father of the child directly charged to be his, it was most material to his defense, and he should be allowed to prove it by all relevant evidence. There is no dissent in the authorities from these propositions."

To support its holding, the court cites the following cases: *State* v. *Mobley,* 87 Pac. 815; *State* v. *Apley,* 141 N. W. 740; 48 L. R. A. (N. S.) 269, and note at page 276; *People* v. *Flaherty,* 29 N. Y. Supp. 641: *Bice* v. *State,* 38 S. W. (Tex.) 803; *State* v. *Height,* 91 N. W. (Iowa) 935-940; 59 L. R. A. 437; *People* v. *Currie,* 111 Pac. (Cal.) 108; *Parker* v. *State,* 136 S. W. (Tex.) 453; 22 R. C. L., sec. 45, page 1211. We have examined the cases cited and find that they support the court's holdings.

It is a well established doctrine that in prosecutions for carnal abuse, the prosecutrix being under the age of consent, her illicit relations with other men, showing want of chastity, are immaterial, because in such a pros-

ecution the chastity of the prosecutrix is not in issue, and testimony tending to prove specific acts of sexual intercourse with others than the accused is not relevant. *Pleasant* v. *State,* 15 Ark. 627; *Plunkett* v. *State,* 72 Ark. 409; *Renfroe* v. *State,* 84 Ark. 16; *Peters* v. *State,* 103 Ark. 119; *Davis* v. *State,* 150 Ark. 500. But the doctrine seems to be equally well established, as shown by the above authorities, that where the State undertakes on direct examination, as was done here, to corroborate the testimony of the prosecutrix by introducing a child which she testified was the result of the sexual intercourse with the accused, then testimony introduced by him in rebuttal, tending to prove that another might have been the father of the child, is competent and relevant. The logical tendency of such testimony would be to break down the credibility of the prosecuting witness on an issue which the State has elected to bring forward as material to the cause. Before such testimony becomes relevant, however, it devolves upon the appellant to show that the alleged acts tending to prove sexual intercourse with another occurred about the time conception took place. The testimony, in other words, to be competent must tend to contradict and rebut the testimony elicited by the State on the direct examination of the prosecutrix.

Without discussing the ruling of the court upon the offered testimony of each particular witness, which the court rejected, the above will be a sufficient guide to the court in determining what testimony of the character indicated will be competent on a new trial. The court erred in excluding the testimony tending to prove that the prosecutrix admitted that the child was the child of Hughie Warren and tending to show that others had sexual intercourse with the prosecutrix about the time the child was begotten.

3. The appellant offered testimony tending to contradict the testimony of the prosecutrix given before the magistrate in the preliminary trial of the appellant. The appellant did not ask the prosecutrix on cross-examina-

tion any questions concerning her testimony before the examining magistrate, and did not ask her concerning specific acts of immorality or illicit intercourse with others. No proper foundation, therefore, was laid for the introduction of testimony showing that the prosecutrix had made statements contradictory to her testimony on the trial. If the appellant had asked the prosecutrix concerning the specific acts of alleged intercourse with others, and she had answered in the negative, appellant would have been bound by her answers. The offered testimony in the form presented was wholly collateral to the issue being tried, and the court, therefore, did not err in not allowing same. See *Davis* v. *State, supra; Brust* v. *State,* 153 Ark. 348.

4. The court quashed the depositions of certain witnesses taken by the appellant at Caruthersville, Missouri. Due and proper notice was given to the prosecuting attorney for the taking of such depositions. The depositions were not taken by consent, and appellant did not apply to the court, or a judge in vacation, etc., for an order authorizing him to take the depositions. Sec. 3112, C. & M. Digest, requires this be done. The above section is a part of the Criminal Code, and has never been repealed. Section 118 of the Revised Statutes, digested as sec. 130, ch. 52 of Gould's Digest, provides as follows: "When any issue of fact is joined in any criminal case, and any witness for the defendant resides out of the State, or residing within this State, is ancient, sick, infirm, or is about to leave the State, such defendant may apply to the court in which the cause is pending, for a commission to examine such witness upon interrogatories thereto annexed; and such court shall grant the same on the same terms as are provided by law in civil cases."

In *Gibbony* v. *Rogers,* 32 Ark. 462, the court held that the above provision of the criminal code, which was then digested as sec. 1819 of Gannt's Digest, and which is the same as section 3112, Crawford & Moses' Digest, was not intended "to so alter or amend the law

as it then stood in Gould's Digest, *supra,* to prohibit the taking of depositions out of the State in criminal cases and to make a distinction in that regard between them and civil cases." But it was not there held that the depositions of witnesses residing out of the State could be taken in a criminal case without an order of the court or judge for that purpose. That was not the question before the court in *Gibbony* v. *Rogers, supra.* In that case there was an application for an order authorizing the taking of depositions of witnesses residing out of the State, and this court held that the order was necessary. So, as the law now stands, the depositions of witnesses residing out of the State may be taken in criminal cases, but such depositions can only be taken upon order of the court, etc., authorizing the same, as provided in sec. 3112 of Crawford & Moses' Digest. The trial court therefore did not err in suppressing the depositions.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.