John Mark McDOLE *v.* STATE of Arkansas

CR 99-332                                              6 S.W.3d 74

Supreme Court of Arkansas
Opinion delivered December 2, 1999

*Christopher Carter*, Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

LAVENSKI R. SMITH, Justice. John Mark McDole ("McDole") appeals his conviction for first-degree murder and sentence of life in prison from the Baxter County Circuit Court. McDole raises four points for reversal on appeal. First, he challenges the sufficiency of the evidence to proof he committed first-degree murder. Second, he contends that Arkansas Code Annotated Section 16-44-201 violates a defendant's Sixth and Fourteenth Amendment right to counsel. Third, McDole argues that the trial court erred in not releasing him prior to trial after he had been incarcerated for nine months. Finally, McDole asserts that the trial court erred by admitting evidence of a potentially incriminating statement made five months prior to the murder. After a thorough review of the record, we find no error and affirm. Our jurisdiction is pursuant to Sup. Ct. R. 1-2(a)(2) in that McDole received a sentence of life imprisonment.

*Facts*

The relevant facts began with the Baxter County Sheriff's office investigation of a report of a burning truck on August 22, 1997. Their investigation identified the registered owner of the truck to be Alma Teagarten ("Alma"). Upon questioning, Alma informed them that she had given her former daughter-in-law, Kelly Keehn Teagarten ("Kelly"), permission to drive the truck. Further investigation revealed that Willis Teagarten ("Willis"), Kelly's ex-husband and son of Alma, filed a missing person report on Kelly on the evening of August 22, 1997. On August 23, 1997, Mountain Home Police responded to a call at a local motel where the clerk reported that a guest wished to speak with police. Upon arrival, Appellant McDole stated to the officer that he had a "hit list," and he exclaimed that he needed to warn others on the list because some had already been killed. The officer noticed Kelly's name on the list, and the list indicated that she had already "been erased." McDole sought police aid to warn other people. Later,

McDole told police his brother Paul had made up the list and hired a hit man to carry out the killings. McDole then fled from the motel in an automobile but other officers directed him off the road into the parking lot of a nearby restaurant. Appellant left his vehicle and began shouting about someone across the street having a gun. Appellant then yelled at people nearby that the police intended to kill him. Police arrested McDole for disorderly conduct and placed him in jail.

On Sunday, August 24, 1997, Baxter County deputies discovered the body of Kelly Keehn Teagarten at the Shipp's Ferry landing in Baxter County near the White River. Her body had two gunshot wounds, a contact shot to the back of the head and a shot into the left side of the back. Medical testimony indicated Kelly Keehn Teagarten was murdered on August 21 or 22, 1997.

*II.*

*Sufficiency of the Evidence*

Appellant alleges the trial court convicted him based upon evidence insufficient to establish first-degree murder. At trial, appellant moved for a directed verdict at the close of the State's case and argued that the circumstantial evidence introduced by the State was not sufficient to overcome every other reasonable hypothesis consistent with innocence. Appellant offered no witnesses and rested immediately after the State rested its case. Appellant moved for a directed verdict. He contended lack of proof of intent; that no murder weapon has been identified; that there was no confession; that no evidence placed him at the murder scene; and that the evidence showed co-defendant Dickerson was the more likely murderer. We hold that the trial court did not err in denying McDole's directed-verdict motion.

A directed-verdict motion is a challenge to the sufficiency of the evidence. *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998). We consider sufficiency of the evidence before addressing other alleged trial errors. The test for determining sufficiency of the evidence is whether there is substantial evidence to support the verdict. On appeal, we will review the evidence in the light most favorable to the appellee and sustain the conviction if there is any

substantial evidence to support the verdict. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. Only evidence supporting the verdict will be considered. It is important to note that we make no distinction between circumstantial and direct evidence when reviewing for sufficiency of the evidence. However, for circumstantial evidence to be sufficient, it must exclude every other reasonable hypothesis consistent with innocence. Whether the evidence excludes every hypothesis is left to the jury to determine. *Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999). Guilt may be proved in the absence of eyewitness testimony, and evidence of guilt is not less because it is circumstantial. *Trimble v. State*, Ark. 161, 871 S.W.2d 562 (1994).

Appellant argues that the State only showed that he had made numerous statements accusing the victim of giving his friend AIDS, that he called her a snitch, and that her name was a on a "hit list" in his possession, which appellant claimed actually belonged to his brother. However, evidence adduced at trial established sufficient evidence, albeit circumstantial, to support McDole's conviction.

Robert Smith testified that although he knew McDole, he had not seen him for a long time prior to August 21, 1997. Smith testified that he went to McDole's residence in the evening on that date to retrieve a borrowed motorcycle. He also testified that McDole attended a party Smith hosted on August 21. Smith recalled appellant borrowed a .22 caliber pistol from him that night. McDole told Smith he needed the pistol to protect him from Mexicans who had shot at him in Mountain View. McDole reappeared at his house about two hours later, showed the pistol, and stated, "You've got to get rid of it. It's been used." Appellant then stated two or three times that his co-defendant, Donnie Dickerson, had "shot the bitch." About twenty minutes later, Donnie Dickerson appeared at Smith's residence and stated, "Mark shot the bitch." When leaving, appellant asked Robert Smith for some gas saying, "I've got a truck I've got to burn." The truck Kelly was driving was found burned on August 21, 1997. When Robert Smith saw the appellant the next day, McDole told him, "You better say that they (McDole and Dickerson) were there all night...."

Robert Smith's cousin Bryan testified that he heard appellant tell Robert, "Donnie shot the bitch." He then testified appellant

went to the sink and washed his hands and arms and then poured whiskey over them. Bryan Smith also overheard appellant talking to Robert about gasoline and torching a truck.

Angela Parnell testified that appellant told her prior to the murder that he wanted to kill Kelly because she had "narked" on him and had given AIDS to Dickerson. Larry Foster testified five months prior to the murder that appellant told him all snitches ought to be shot in the head, and he knew a place, a big deep ditch, that would be a perfect place to put a body. The place matched where police found the victim's body.

Finally, Lisa Hixon, McDole's fiancee in August 1997, testified appellant complained to her prior to the murder that Kelly was a snitch. Shortly after the murder she testified that she saw both appellant and Donnie Dickerson, and that they acted depressed. She also testified that appellant cleaned his truck, which was out of character. It was the first time she had ever seen him do it. When they were driving that same day, she overheard appellant tell Dickerson, "Well, at least you don't have to worry about being bothered by her anymore." She also testified that on the evening of August 22, 1997, while at appellant's residence, appellant stated, "We're too close. It's making Donnie nervous. It's making me nervous." While there, she recalls McDole's stating, "Donnie couldn't go through with it and so he had to finish it for him." Hixson also recalled McDole making the comment that "he'd had to put a bullet through her head." Finally, according to Hixson appellant asked her, "If I was to kill somebody, would you still love me?"

Tammy Malone, who managed the motel in which McDole was registered on August 22, 1997, stated that McDole checked in around 1:00 a.m. that morning. She explained how she observed him come to the front desk at 8:00 a.m. behaving nervously and speaking incoherently. He declared to her that he feared for his life because of murders in Little Rock which he somehow related to a note he carried. McDole asked her if she knew an honest cop, and she immediately contacted the police.

Willis Teegarten, Kelly's ex-husband, testified his former wife told him she believed appellant and Donnie Dickerson were upset with her because they believed she had snitched on a friend for writing hot checks.

Lisa Sakevich, on behalf of the state crime lab, testified that she found gunpowder residue on clothing articles belonging to McDole which were found in his truck. She also found a trace of gunpowder on the truck seat cover and gasoline residue on some other of McDole's property found in the truck.

We believe the court properly submitted the above evidence to the jury. When viewed in a light most favorable to the State, the evidence could be properly connected and did not leave the jury to speculation or conjecture. When circumstantial evidence rises above suspicion and is properly connected, and when, viewing that evidence in the light most favorable to the state, the jury is not left to speculation and conjecture alone in arriving at its conclusions, it is basically a question for the jury to determine whether the evidence excludes every other reasonable hypothesis. It is only every other reasonable hypothesis, not every hypothesis, that must be excluded by the evidence. The jury certainly should test the reasonableness of any other hypothesis. *Upton v. State*, 257 Ark. 424, 516 S.W.2d 904 (1974). In the instant case, substantial evidence supported the jury's verdict.

## II. Constitutionality of Ark. Code Ann. § 16-44-201

Appellant asserts that he was denied equal protection of the law and his right to competent counsel because Arkansas does not provide for compulsory depositions in criminal cases as in civil cases. More succinctly stated, appellant believes his inability to obtain pretrial discovery by way of deposition fundamentally hampered his ability to prepare a defense and deprives him of a fair trial. Appellant contends that certain witnesses refused to speak with defense counsel. Appellant thus challenges the constitutionality of Ark. Code Ann. § 16-44-201 (a) (Repl. 1994) (*Authorization for deposition generally — Manner of*). The statute in question provides:

(a) The court or judge in vacation, or a justice of the Supreme Court, may authorize either party to take the deposition of a material witness where there are reasonable grounds to apprehend that, before trial, the witness will die, will become mentally incapable of giving testimony or physically incapable of attending the trial, or will become a nonresident of the state. The materiality of the testimony and the reason for taking the deposition shall be shown by affidavit.

(b) The court or judge shall, by written order, prescribe the manner of taking the deposition whether by interrogatories or upon notice to the parties.

(c) Upon the death of the witness, or upon his becoming mentally incapable of testifying or a nonresident of the state and absent therefrom so that he could not be summoned, the deposition taken in pursuance of such order may be read as evidence, provided that the grounds of nonresidence and absence from the state shall not be sufficient unless the party wishing to use the deposition makes an affidavit that he has tried in good faith to procure the attendance of such witness and been unable to do so.

■ Our State's statutes are presumed constitutional, and the burden of proving otherwise is placed on the party challenging the legislative enactment. *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997); *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997). We resolve all doubts in favor of a statute's constitutionality. *Golden v. Westark Community College*, 333 Ark. 41, 47, 969 S.W.2d 154 (1998).

■ In Arkansas, "the right to take depositions rests upon statutory authority and in no case can the right be exercised unless the authority therefor exists." *Russell v. State*, 269 Ark. 44, 598 S.W.2d 96 (1980), citing*Missouri & North Arkansas Railroad Company v. Daniels*, 98 Ark. 352, 136 S.W. 651 (1911). The subject statute provides that a defendant may receive authorization to take a deposition under the stated circumstances, but does not allow a criminal defendant to simply set up depositions at will and compel attendance as in a civil case. Apparently, this has always been the law in Arkansas. In 1837, our statutes provided when in criminal proceedings the defendant had a witness who was out of the State, or within the State but who was sick, infirm or about to leave the State, the defendant "may apply to the court ... for a commission to examine such witness." Ark. Rev. Stats. of 1837, Chapter XLV, §§ 118-119. *See also, Giboney v. Rogers, Judge*, 32 Ark. 462 (1877); *McDonald v. State*, 155 Ark. 142, 244 S.W. 20 (1922); *Jones v. State*, 205 Ark. 806, 171 S.W. 2d 298 (1943); *Bailey v. State*, 227 Ark. 889, 302 S.W. 2d 796 (1957).

Appellant seeks a ruling that depositions in criminal actions may be taken as a matter of right upon notice, as in a civil action under the Rules of Civil Procedure. He asserts that the federal

constitution's equal protection clause and the right to competent counsel require this result. We disagree. Neither the federal constitution nor the Arkansas Constitution require the result appellant seeks.

Under Article 2, section 10, of the Arkansas Constitution, a criminal defendant is entitled to "compulsory process for obtaining witnesses in his favor...." In discussing this provision we stated:

> These constitutional provisions are but a declaration of the common law rule and the constitutional guaranty is confined to those who are witnesses against the accused. *State v. Lonergan,* 201 Or. 163, 269 P.2d 491 (1954). They do not require that every witness who has knowledge of relevant facts testify. *People v. Mason,* 183 Cal. App. 2d 168, 6 Cal. Rptr. 649 (1960). They do not guarantee the accused that a victim, accuser, complainant, complaining witness, or private prosecutor will be called as a witness or appear at the trial, and the establishment of the elements of the crime by the testimony of other witnesses does not constitute a variance from an indictment naming the victim. *People v. Jolliff,* 31 Ill.2d 462, 202 N.E.2d 506 (1964); *State v. Malloch,* 225 A.2d 760 (Me., 1967); *Gaertner v. State,* 35 Wis.2d 159, 150 N.W.2d 370 (1967); *State v. James,* 76 N.M. 376, 415 P.2d 350 (1966); *Harris v. People,* 174 Colo. 483, 484 P.2d 1223 (1971); *People v. Gomez,* 26 Cal. App. 3d 225, 103 Cal. Rptr. 80 (1972); *Commonwealth v. Fisher,* 131 Pa. Super. 117, 198 A. 925 (1938). Accord, *Hickinbotham v. Williams,* 228 Ark. 46, 305 S.W.2d 841. Certainly, there is no constitutional requirement that one, who has no personal knowledge of relevant facts and cannot give material evidence concerning the crime, be offered as a witness or appear at the trial. *State v. Malloch, supra; People v. Mason, supra.*

*Hoover v. State,* 262 Ark. 856, 562 S.W.2d 55 (1978). On the federal side, there is no constitutional right to pretrial discovery. *Wardius v. Oregon,* 412 US. 470 (1973). Neither the Sixth Amendment nor the due process clause of the Fourteenth Amendment requires a State to provide pretrial depositions as asserted by appellant. "There is no general constitutional right to discovery in a criminal case...." *Weatherford v. Bursey,* 429 U.S. 545 (1977). In *Pennsylvannia v. Ritchie,* 480 U.S. 39 (1987), the U.S. Supreme Court rejected an argument that the confrontation clause could be used to mandate pretrial discovery. The Court stated, "If we were to accept this broad interpretation of *Davis,* the effect would be to transform the Con-

frontation Clause into a constitutionally compelled rule of pretrial discovery. Nothing in the law supports such a view. The opinions of this court show that the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. (Citations omitted). The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses...." *Pennsylvania, supra,* at 52. Thus, the confrontation clause offers appellant no help.

### *Equal Protection Clause*

Appellant attacks the "inequality between criminal and civil litigants regarding depositions...." He asserts he is denied equal protection under the laws because he believes civil litigants enjoy a greater ability to prepare for trial than do criminal defendants. Appellant cites no U.S. Supreme Court or Eighth Circuit cases for his argument that the equal protection clause of the Fourteenth Amendment requires civil and criminal litigants be treated the same procedurally. We decline appellant's invitation to hold that the equal protection clause requires that civil and criminal defendants have identical discovery rights. Equal protection does not require that persons be dealt with identically; it only requires that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment be not so disparate as to be arbitrary. *See Douthitt v. State,* 326 Ark. 794, 935 S.W.2d 241 (1996). The issue of equal protection involves "whether people in the same situation are being treated differently...." *Golden v. Westark Community College,* 333 Ark. 41, 969 S.W.2d 154 (1998). While both criminal and civil defendants may be called litigants, they are far from similarly situated.

### *III. Ark. R. Crim. P. 28.1*

Appellant asserts he was not released at nine months pursuant to Ark. R. Crim. P. 28.1(a), and that therefore charges against him

should be dismissed with prejudice. Appellant's argument is meritless. McDole raises this issue on direct appeal after trial and conviction, and it is therefore moot. *Simpson v. Sheriff of Dallas County*, 333 Ark. 277, 968 S.W. 2d 614 (1998). "As our cases make clear, a person held in violation of Rule 28.1(a) is only entitled to release on his or [her] own recognizance, not dismissal of the charges or absolute discharge. (Citations omitted.)" *Simpson, supra,* at 284. Appellant further argues that the trial court should have recused in that it did not address the issue of his pretrial release. The decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996). An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court. *Id.* at 244. Appellant has made no such showing.

## *IV. Rule 404(b)*

As his final point on appeal, McDole asserts it was error for the trial court to deny his motion to exclude the testimony of Larry Foster that appellant had told him of "this exact scenario" five months prior to the murder. Appellant objected at trial on the basis of relevance and on appeal argues that the testimony constitutes inadmissible character evidence. The rule argued at trial would have been Ark. R. Evid. 402 and appellant now argues Ark. R. Evid. 404. Relevance involves whether the evidence has any tendency in fact to make determination of the action more or less probable. Ark. R. Evid. 401. Rule 404 involves admissibility of character evidence. Therefore, the trial court was not apprised by appellant of the particular error now argued, and as such, it will not be considered on appeal. In *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998), we again reiterated

> that we will not consider an argument raised for the first time on appeal. *Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997); *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997). To preserve an argument for appeal, there must be an objection in the trial court that is sufficient to apprise the court of the particular error alleged, and the appellate court will not address arguments raised for the first time on appeal. *Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996). A party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the

arguments made at trial. *Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997).

Appellant has thus failed to preserve this point for appeal.

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

Affirmed.