**Opinion issued March 1, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00246-CR

————————————

### DORSEY NATHANIEL CARR III, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Case No. 74219

## MEMORANDUM OPINION

A jury found Dorsey Carr guilty of driving while intoxicated as a third offender, enhanced by a prior felony conviction, and it assessed his punishment at ten years' confinement. *See* TEX. PENAL CODE ANN. §§ 12.42, 49.04, 49.09(b) (West 2011 & Supp. 2015). Carr contends on appeal that his counsel was

ineffective because she did not move to suppress evidence obtained during his investigative detention. He also contends, and the State concedes, that insufficient evidence supported the trial court's assessment of attorney's fees against him. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West 2009 & Supp. 2015). We hold that Carr has failed to meet his *Strickland* burden to demonstrate that his trial counsel performed deficiently. We agree, however, that the trial court erred by ordering Carr to pay attorney's fees. We therefore modify the trial court's judgment to delete the order to pay attorney's fees; we affirm as modified.

## BACKGROUND

On July 20, 2014, at around 6:00 p.m., Jordan Brooks was driving to his house in Angleton after a beach outing in Surfside with his family. As he drove north on FM 523, an older red minivan, which Brooks identified as a 1990s-model Chrysler, pulled up behind Brooks, almost rear-ending his car. The red van passed Brooks and almost clipped Brooks's car when it moved back into Brooks's lane. The red van then went off the road, swerved back onto the road and into oncoming traffic, and finally reentered Brooks's lane. Brooks watched the red van turn off FM 523 onto Stratton Ridge Road, toward the town of Clute; it was traveling at such a high rate of speed that it almost rolled over. Concerned for the safety of other motorists, Brooks called 911. He reported that a driver of a red 1990s model Chrysler minivan was driving recklessly and heading west toward Clute on

2

Stratton Ridge Road. In his 911 call, Brooks reported that the van was "all over the road," and that it was "riding in both lanes." Brooks did not, however, identify himself by name to the 911 operator during the call.

Between 6:00 and 6:30 p.m., Officer Edward Burnett with the Clute Police Department was notified by dispatch of a drunk driver in a red minivan, who was moving toward Clute on Stratton Ridge Road. Within Clute, Stratton Ridge Road is known as Main Street. On Main Street, Officer Burnett saw two red minivans, one parked in front of a convenience store and the other traveling west on Main Street. Reasoning that the other van was moving toward the police station where other officers could stop it, Officer Burnett approached the van at the convenience store. After determining that the driver of this van was sober, Officer Burnett drove west on Main Street, in the direction the other van had gone. After traveling about two blocks, he saw the van pull into the parking lot of a bar. Officer Burnett radioed his sergeant, Jessie Soley, who was nearby, and they pulled into the bar parking lot in front of the red van.

As Officer Barnett and Sergeant Soley approached on foot, Carr was sitting in the van's driver's seat with his door open. Barnett and Soley walked up to the van and Carr climbed out. Soley asked Carr for his driver's license and insurance, and told Carr that he was being stopped because someone had reported that he was "all over the road." Soley noticed that Carr smelled strongly of alcohol, his

3

balance was unstable, his eyes were red and bloodshot, and his speech was slurred. Carr either failed or did not complete field sobriety tests, whereupon the officers arrested him and brought him to the police station. Officer Burnett later brought Carr to Brazosport Hospital, where he consented to blood testing. According to the test results, Carr had a blood-alcohol level of 0.255 at the time of the blood draw, above the legal limit of 0.08. *See* TEX. PENAL CODE ANN. § 49.01(2)(B) (West 2011).

Carr's appointed counsel moved to suppress the blood test evidence, but did not move to suppress the evidence gathered during his encounter with the police. The trial court denied the motion, and the case proceeded to trial. Although the trial court found Carr to be indigent, the judgment of conviction assessed Carr $2,954.53 in attorney's fees.

## DISCUSSION

### I. Ineffective Assistance and the Suppression Hearing

Carr contends that his trial counsel rendered ineffective assistance by failing to move to suppress the evidence gathered from the officers' encounter with him, and the later investigative detention, on the ground that the officers had no reasonable suspicion that a crime had been committed when they first approached Carr.

4

## A.     Standard of Review and Applicable Law

To prevail on his ineffective-assistance-of-counsel claim, Carr must show that (1) his counsel's performance was deficient and (2) a reasonable probability exists that the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2065 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). A defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats his ineffectiveness claim. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). The first prong of this test requires the defendant to show that counsel's performance fell below an objective standard of reasonableness, in that counsel made such errors that he was not functioning effectively as counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2065; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). We apply a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We presume trial counsel's actions were reasonably professional and motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Furthermore, a claim of ineffective assistance must be firmly supported in the record. *Thompson*, 9 S.W.3d at 813. Where the record does not offer an explanation for trial counsel's actions, we must presume that counsel made all

5

significant decisions in the exercise of reasonable professional judgment. *Jackson*, 877 S.W.2d at 771; *Broussard v. State*, 68 S.W.3d 197, 199 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (en banc). However, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005); *see also Oldham v. State*, 977 S.W.2d 354, 360 (Tex. Crim. App. 1998) ("[A] claim on direct appeal of denial of counsel should be entertained and upheld if supported by the record.").

The second prong requires the defendant to show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Lopez*, 343 S.W.3d at 1442. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Thompson*, 9 S.W.3d at 812 (citing *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986)).

When an ineffective assistance claim alleges that counsel was deficient in failing to move to suppress or to object to the admission of evidence, the defendant must show, as part of his claim, that the evidence was inadmissible and that the motion to suppress or the objection would have been granted. *Ortiz v. State*, 93

S.W.3d 79, 93 (Tex. Crim. App. 2002); *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). A police officer may temporarily detain a person for investigative purposes if the officer reasonably suspects that the detained person is connected with a crime. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968); *Wade v. State*, 422 S.W.3d 661, 668–69 (Tex. Crim. App. 2013). Reasonable suspicion exists when a police officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014). Courts determine if reasonable suspicion exists by objectively viewing the totality of the circumstances. *Id.*

Whether a reasonable suspicion exists "is dependent upon both the content of information possessed by police and its degree of reliability." *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)). The detaining officer need not personally be aware of every fact that supports a reasonable suspicion to detain; rather, "the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (quoting *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)).

A police officer need not personally observe the facts giving rise to reasonable suspicion for a traffic stop. *See Navarette*, 134 S. Ct. at 1687–88; *see also Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005) ("The factual basis for stopping [an individual] need not arise from the officer's personal observation, but may be supplied by information acquired from another person."). Rather, a stop may be justified if the facts underlying the traffic stop are observed by a civilian informant. *See Navarette*, 134 S. Ct. at 1688. An anonymous tip alone is rarely enough to justify a traffic stop. *See id.* (quoting *White*, 496 U.S. at 329, 110 S. Ct. at 2415). However, when an anonymous tip is supported by "sufficient indicia of reliability," it may justify a stop. *Id.*

Courts have identified several indicia of reliability with respect to tips from a citizen informant. An informant may be treated as more reliable if he provides a firsthand account and a detailed description of wrongdoing. *Hawes v. State*, 125 S.W.3d 535, 539 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also Navarette*, 134 S. Ct. at 1689 (observing that contemporaneous eyewitness reports of suspected criminal activity have "long been treated as especially reliable"). Courts consider an informant who is not connected with the police inherently trustworthy when advising the police of suspected criminal activity. *Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Further, the Supreme Court has recognized that because the 911 system "has some

8

features that allow for identifying and tracing callers," tips from 911 callers should be considered more reliable. *Navarette*, 134 S. Ct. at 1689–90.

## B.    Analysis

Carr argues that his trial counsel should have objected to the admission of the evidence gathered by the investigating officers because their detention of Carr was not justified by a reasonable suspicion. He reasons that the police officers' identification of Carr's vehicle as matching Brooks's description is not itself enough to corroborate Brooks's tip.

We note that the officers approached Carr in a parking lot after seeing him parked there; they did not institute a traffic stop. During their encounter with Carr, they personally observed evidence that Carr was impaired. Even if their actions constituted a traffic stop, the Supreme Court has held that a traffic stop was justified by reasonable suspicion under similar circumstances. *See Navarette*, 134 S. Ct. at 1692. In *Navarette*, the highway patrol received a report from an anonymous 911 caller that a silver Ford F-150 pickup traveling southbound on the highway had run him off the road. *Id.* at 1686–87. A few minutes later, a highway patrolman encountered a truck matching the one described by the caller traveling in the direction reported. *Id.* at 1687. Though the record contained no indication that the patrolman himself observed the silver pickup driving erratically, the Court held that the caller's tip contained adequate indicia of reliability to support a

9

reasonable suspicion for a stop, given that it was based on eyewitness knowledge, was contemporaneously made, and was made to the 911 emergency system. *Id.* at 1686–87, 1692. The Court also found it persuasive that the caller reported conduct resembling "paradigmatic manifestations of drunk driving." *Id.* at 1691.

The present facts echo those in *Navarette*. Brooks reported that the red van had swerved "all over the road," and was "riding in both lanes," behavior that is consistent with the "lane positioning problems" and "impaired judgment" that *Navarette* recognized as indicators of drunk driving. *Id.* at 1691. Brooks reported that the van he saw was a red 1990s Chrysler style minivan. Carr was driving a red 1994 Plymouth minivan. Brooks reported Carr's dangerous driving via the 911 system. Like the 911 call in *Navarette*, Brooks's 911 call makes it clear that he reported Carr's driving immediately after personally witnessing it. Taken together, these factors establish that Brooks's anonymous tip provided the police with a "particularized and objective basis" to justify a traffic stop. *See Navarette*, 134 S. Ct. at 1687 (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 695 (1981)); *Orsag v. State*, 312 S.W.3d 105, 115 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (holding traffic stop justified when vehicle's make, type, and color, combined with its location and direction of travel, were consistent with the report).

## II. Ineffective Assistance and Assessment of Attorney's Fees

Carr next contends that the trial court erred in ordering him to repay fees for his court-appointed attorney because the record contains no evidence that he had the ability to pay, as required by Article 26.05(g) of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West 2009 & Supp. 2015) (requiring trial court to order defendant to pay for appointed counsel if "defendant has financial resources that enable [him] to offset . . . the costs of the legal services provided . . .").

We review the assessment of court costs, including court-appointed attorney's fees, to determine if a basis exists for the award. *See Johnson v. State*, 423 S.W.3d 385, 389–90 (Tex. Crim. App. 2014). If there is no basis in the record to support assessment of court-appointed attorney's fees, the proper remedy is to reform the judgment by striking the court-appointed attorney's fees. *Gates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013).

An indigent defendant is entitled to have an attorney appointed to represent him in criminal proceedings at no cost. TEX. CODE CRIM. PROC. ANN. art. 1.051(c) (West 2005 & Supp. 2015). Once the court determines that a defendant is indigent, the defendant is presumed to remain indigent for the duration of the proceedings. TEX. CODE CRIM. PROC. ANN. art. 26.04(p); *Gates*, 402 S.W.3d at 251–52. A material change in the defendant's financial circumstances must occur to overcome

11

this presumption. TEX. CODE CRIM. PROC. ANN. art. 26.04(p); *Gates*, 402 S.W.3d at 251–52. If the trial court later finds that the defendant has resources to pay the court-appointed attorney's fees, the court may order him to do so. TEX. CODE CRIM. PROC. ANN. art. 26.05(g).

The trial court found that Carr was indigent and appointed counsel to represent him. The State concedes, and we agree, that the record contains no evidence that would support a finding that Carr could pay his attorney's fees. Accordingly, we reform the judgment and strike the portion ordering Carr to repay the fees for his court-appointed attorney. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g); *Johnson*, 423 S.W.3d at 389–90; *Gates*, 402 S.W.3d at 251–52.

## CONCLUSION

We modify the judgment to delete the portion ordering payment of attorney's fees. We affirm the judgment of the trial court, as modified.

Jane Bland
Justice

Panel consists of Justices Bland, Brown, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).